WESTERN UNION TELEGRAPH CO. v. MARTIN. (No. 7260.)

(Court of Civil Appeals of Texas. Galveston. Dec. 13, 1916. Rehearing Denied Jan. 4, 1917.)

1. TELEGRAPHS AND TELEPHONES ⬤⟿65(2)— DELAY IN DELIVERY—ALLEGATIONS OF FACT.

Allegations in a petition for damages caused by delay in the transmission of money by telegraph that the money was more than sufficient to pay the expenses of having the body of plaintiff's husband transported to her domicile, that if the money had been received by the addressee at the time the telegraph company agreed to deliver it, the addressee would have had the body of plaintiff's husband shipped to her for burial, and that by reason of the failure to transmit the money within the time stipulated, plaintiff was prevented from having the body of her husband sent to her for burial, were allegations of fact, and sufficiently charged that the negligence of defendant was the proximate cause of plaintiff's mental anguish, resulting from failure to have the body shipped to her.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 55; Dec. Dig. ⬤⟿ 65(2).]

2. TELEGRAPHS AND TELEPHONES ⬤⟿65(1)— DELAY IN DELIVERY—PETITION—EFFECT OF DELIVERY.

A petition for delay in delivering money transmitted by telegraph which prevented the body of plaintiff's husband being shipped to her need not allege what particular arrangements could have been made to procure the shipment of the body, or when or by whom or with whom such arrangements could have been made.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 54; Dec. Dig. ⬤⟿ 65(1).]

3. TELEGRAPHS AND TELEPHONES ⬤⟿66(4)— SUFFICIENCY OF EVIDENCE—CAUSE OF LOSS.

In an action for relay in delivering money transmitted by telegraph, evidence held sufficient to warrant the jury in finding that the delay in delivering the money was the proximate cause

of the failure to have the body of plaintiff's husband shipped to her for burial.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 63; Dec. Dig. ⬤⟿66(4).]

4. COMMERCE ⬤⟿80—INTERSTATE COMMERCE— TELEGRAM—MENTAL ANGUISH.

Permitting the recovery of damages for mental anguish for failure to deliver an interstate telegram is not an arbitrary burden on interstate commerce, or an unreasonable interference with such commerce.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. ⬤⟿80.]

5. EVIDENCE ⬤⟿80(1) — PRESUMPTION — FOREIGN LAWS.

In an action for mental suffering caused by delay in the delivery of an interstate telegram, it will be presumed that the law of the state in which the message was to be delivered was the same as the law of the forum.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 101; Dec. Dig. ⬤⟿80(1).]

6. COMMERCE ⬤⟿80—INTERSTATE COMMERCE— RECOVERY FOR MENTAL ANGUISH—CONSTITUTIONALITY.

The law, permitting recovery for mental anguish caused by delay in delivering an interstate telegram, does not violate the interstate commerce clause of the federal Constitution (Const. U. S. art. 1, § 8, cl. 3).

[Ed. Note.—For other cases, see Commerce, Dec. Dig. ⬤⟿80.]

Appeal from District Court, Harris County.

Action by Mrs. E. P. Martin against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Hume & Hume, of Houston, for appellant. Cooper & Merrill, of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against appellant to recover damages for mental anguish alleged to have been the result of the negligent failure of appellant to promptly deliver money which it undertook to deliver for appellee in Denver, Colo., and thereby depriving appellee of the comfort and privilege of having the body of her deceased husband shipped from Denver to Houston, Tex., for burial.

The petition alleges that plaintiff's husband died at Denver on the afternoon of January 17, 1915, at the home of his mother, Mrs. C. R. Martin, plaintiff at that time being at her home in Houston, Tex., and that upon receipt of notice of her husband's death she at once telegraphed his mother, requesting her to have his body shipped to Houston for burial; that thereafter, on the morning of the 19th day of January, 1915, plaintiff received from the said Mrs. C. R. Martin a telegram by which plaintiff was advised that the said Mrs. C. R. Martin was financially unable to advance the funds necessary to ship the body of the said E. P. Martin from Denver to Houston for burial, and that unless advised to the contrary by plaintiff, the body of the said E. P. Martin would be buried at Denver, Colo., at 2:30 o'clock p. m. on the 19th day of January, 1915; that plaintiff,

after the receipt of said telegram on the morning of January 19th, delivered $100 to defendant at Houston, Tex., which was more than sufficient to pay the charges for transporting the body of plaintiff's husband from Denver to Houston, and that the agent of defendant who received said money, after being fully informed of all the facts above alleged and the purpose for which it was to be used, agreed and undertook to deliver same with an accompanying telegram sent by plaintiff to Mrs. C. R. Martin at Denver, Colo., before 1:30 p. m. on said date; that said telegram, which was received by defendant for transmission at the time it received the money, repeated plaintiff's request to have the body of her husband shipped to Houston, and notified Mrs. C. R. Martin that plaintiff had wired her $100; "that said telegram and money were in fact transmitted' to Denver, Colo., and were in fact delivered to the said Mrs. C. R. Martin, but that the same were not so transmitted and delivered within the time stipulated by said agreement, nor within a reasonable time; that the same were not so delivered to the said Mrs. C. R. Martin until after she had returned from the funeral and burial of the said E. P. Martin at about 5:30 o'clock p. m. on said 19th day of January, 1915; that the said Mrs. C. R. Martin was the mother of the deceased, E. P. Martin, and she had charge of the funeral arrangements of the said E. P. Martin, and that had said telegram and money been so delivered to her prior to the burial of the said E. P. Martin in Denver, Colo., which occurred at about 2:30 o'clock on said 19th day of January, 1915, she could and would have arranged for and had·the body of said E. P. Martin, deceased, shipped to Houston, Tex., for burial, but that on account of the failure of defendant company to so transmit such message or deliver said money to the said Mrs. C. R. Martin within the time stipulated by the agreement hereinbefore referred to, or within a reasonable time, the same was not received by the said Mrs. C. R. Martin, prior to the hour set for the burial of the said E. P. Martin, and the body of the said E. P. Martin was in fact buried in the city of Denver, Colo.; that by reason of the negligence of the defendant, its agents and servants, and its failure to deliver said telegram within the time stipulated by said agreement and within a reasonable time, plaintiff was prevented from having the body of her deceased husband transported to the city of Houston, the home of the plaintiff and the home of the said E. P. Martin prior to his death, for burial; that she was prevented from being present at the burial of her said husband and of seeing that his remains were properly cared for, and that by reason and in consequence thereof she has suffered great disappointment, grief, and mental pain and anguish, to her damage in the sum of $2,900." The defendant's answer contains a general demurrer and numerous

191 S.W.—13

special exceptions, the nature of which need not be here stated. It also contains a general denial and several special pleas, which it is unnecessary to set out. The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiff for the sum of $1,500. The evidence sustains all of the material allegations of the plaintiff's petition.

[1] We cannot agree with appellant's contention under its first assignment of error that plaintiff's petition fails to show that the delay in the transmission of the money and telegram was the proximate cause of the failure to have the body of plaintiff's husband shipped from Denver to Houston for burial, and that because of this defect in the petition the trial judge erred in not sustaining defendant's general demurrer thereto. The petition, which we have before set out, after alleging that the $100 was more than sufficient to pay the expenses of having the body of the deceased transported to Houston, expressly alleges that if the money and telegram had been received by Mrs. C. R. Martin at Denver at the time appellant agreed to deliver it at that place, Mrs. Martin could and would have·arranged for and had the body of plaintiff's deceased husband shipped to Houston for burial, and that by reason of the failure of defendant to transmit the telegram and money within the time stipulated in its agreement, plaintiff was prevented from having the ·body of her husband sent to Houston for burial. These are allegations of facts, and clearly charge that the negligence of defendant complained of in the petition was the proximate cause of the injury for which recovery is sought.

[2] The second and third assignments of error complain of the refusal of the trial court to sustain special exceptions presented by the defendant to the petition on the grounds that the allegations "that Mrs. C. R. Martin could and would have arranged for and had the body shipped to Houston for burial are too vague, indefinite, and speculative, and are mere conclusions, * * * and it is not shown what particular arrangements could and would have been made had the money or notice thereof been received at Denver on January 19th, to procure shipment of the remains from Denver to Houston, or to procure burial at Houston instead of at Denver, and, it not being shown in what particular manner, by what particular means, or how, or when, or by' whom, or with whom such arrangements could or would have been made with respect to the shipment of the body and burial at Houston and the effectuation of ·burial at Houston."

These assignments are without merit. It would have given defendant no information of which it was not already possessed in common with the general public to have alleged in the petition that there are several lines of railroads operating trains between Denver and Houston, and that these trains trans-

port bodies of deceased persons, and it could not possibly have been of any advantage to defendant to have been informed by the petition on what railroad the body would have been shipped, nor by whom or what character of conveyance it would have been carried to the railroad at Denver. The case of Telegraph Co. v. Mitchell, 91 Tex. 454, 44 S. W. 274, 40 L. R. A. 209, 66 Am. St. Rep. 906, cited by appellant, does not sustain its contention that this petition is insufficient in the respects stated. In that case the petition alleged that if the telegram had been promptly sent, plaintiff could have made special arrangements which "no other person could have effected" by which he would have procured water for his cattle, and thereby prevented the loss and injury for which he sought recovery. The Supreme Court held that a special exception to this petition, on the ground that it did not state what were the special arrangements that plaintiff could have made, should have been sustained. It is, we think, obvious that the reason given for that ruling, which was that defendant was entitled to know what special arrangements it was claimed could have been made in order to be prepared to meet such allegations, does not exist in this case. It is, we think, equally clear that this case should be distinguished from those cases in which the plaintiff sues for damages for being deprived of the privilege of attending the sick bedside or the burial of a relative by reason of delay in the delivery of a telegram. In such cases the telegraph company is entitled to know what means the plaintiff would have taken to reach the place of burial or sickness in order to show, if possible, that he could not, by any practicable route or method of travel, have reached the place in time if there had been no delay in transmission or delivery of the telegram. In this case the information sought to be elicited by the exceptions could not have been of any assistance to defendant in preparing its defense. It is alleged in the petition that the $100 was more than enough to pay the charges for transporting the body of the deceased from Denver to Houston, and that the body had not been shipped on plaintiff's first request because of the inability of Mrs. C. R. Martin to procure the money to pay the transportation charges. These facts, coupled with the facts of common knowledge before mentioned, with knowledge of which defendant must be charged, furnished all the information necessary or proper to enable defendant to meet the allegations of the petition.

[3] Under appropriate assignments of error appellant complains of the refusal of the trial court to instruct the jury to return a verdict for the defendant, and assails the verdict on the ground that it is not supported by any evidence. The contention under these assignments is that the evidence is insufficient to authorize or sustain a verdict against the defendant, because it fails to show that the delay of defendant in delivering the telegram and money was the proximate cause of the failure of plaintiff to procure the shipment of her husband's body to Houston for burial. We do not think these assignments should be sustained. The evidence shows that on January 17th, before hearing from plaintiff, Mrs. C. R. Martin had the body of deceased taken to the Olinger Mortuary at Denver, and, supposing that plaintiff would desire it shipped to Houston, instructed the undertaker to embalm it. On the night of January 17th, after receiving the telegram informing her of her husband's death, plaintiff sent Mrs. Martin the following telegram:

"If financially able, ship Ned's body home."

On the morning of the 18th, after receipt of this telegram, Mrs. Martin ordered the undertaker to prepare the body for shipment, which was done. At the time these arrangements were made by Mrs. Martin, she thought she could procure the money necessary to pay for the transportation of the body. She knew that her son was a member of the Eagles Lodge, and as such member the lodge was obligated to furnish $100 for his burial expenses, and she expected to get this from the lodge in Denver. She was unable to do this, and was also unable, on the 18th, to obtain money elsewhere in Denver. Finding herself in this condition, on the evening of January 18th she sent plaintiff the following night message:

"After making all necessary inquiries, find it impossible to ship Ned's body to Houston. Unable to raise sufficient funds and are therefore doing the very best we can under the circumstances, and are arranging funeral here at two-thirty Tuesday. If possible get money from Eagles and send us."

Before receipt of this message plaintiff had received the $100 benefit from the Eagles Lodge at Houston and sent Mrs. Martin the following telegram:

"Send Ned's body home. I can stand all expenses."

Before sending the telegram to plaintiff on the night of the 18th Mrs. Martin had changed her instructions to the undertaker, and arranged to have the burial in Denver. In making these arrangements she told the undertaker about the $100 burial fund to which deceased was entitled, and instructed him not to incur more than $100 expenses in the burial of the deceased. The bill rendered her by the undertaker after the burial was just $100, and she paid this bill with the money which had been sent her by plaintiff. She testified as follows:

"If I had received such message (referring to the message in controversy) before I left my place of residence to attend the funeral and burial of E. P. Martin, I would have been able to arrange for the shipment of his body from Denver to Houston for burial, and would have done so. I would have so shipped said body if I had received said message above referred to before I left my place of residence to attend the funeral and burial of E. P. Martin. The only reason it was not shipped was lack of money to pay railroad transportation. If said message had

been delivered to me prior to the burial of E. P. Martin, the body of the said E. P. Martin would have been shipped to Houston, Tex., for burial."

The transportation charges for shipping the body from Denver to Houston were $63. She further testified:

"If I had received the $100 at noon on January 19, 1915, the things that would have been necessary to do in order to have the remains buried in Houston instead of Denver were to cancel the burial arrangements here and get relieved, if possible, from payment for the grave. I would have turned the $100 over to the Olinger Mortuary with instructions to pay the railroad fare on the body and if there was any balance left to credit it on the bill, and I would have been responsible for the balance and would have paid it when I got the money."

The body was turned over to the undertaker without any agreement as to the payment of his charges. Everything done by the undertaker prior to the time the change in the arrangements providing for burial at Denver was made was without any knowledge of the existence of the $100 burial fund, and presumably upon the credit of Mrs. C. R. Martin, and there is nothing in the record tending to show that he would have refused to have carried out her instructions in regard to the shipment of the body, or that he would or could have held the body until payment of his charges. We think this evidence authorized the jury to find, as they did, that if there had been no delay in the delivery of the $100, the body of the deceased would have been shipped to Houston, and we are not authorized to disturb the verdict upon this issue.

[4] Under the sixteenth and seventeenth assignments of error appellant presents the propositions that to permit the recovery of damages for mental anguish for the failure of a telegraph company to deliver a message sent from this state into another is an unauthorized imposition by the state of "a direct, unreasonable, arbitrary, and unlimited burden and liability upon interstate commerce," and "an unreasonable interference with and regulation of interstate commerce, * * * all in violation of and conflict with article 1, § 8, subd. 3, of the Constitution of the United States; that to allow plaintiff to recover herein and to hold defendant liable for damages for mere mental anguish herein is and would be, and is an attempt to create, a new, distinct, substantive, and inadmissible right and cause of action to plaintiff and liability upon defendant, unknown to and in derogation of the common law and unauthorized by statute, and to impose upon defendant an unwarranted, unreasonable, arbitrary, and unjust burden, and to impede, interfere with, and regulate interstate commerce in violation of and in conflict with said provision of the Constitution of the United States." No authority in support of these propositions is cited, and we think none can be found. There is nothing unjust or arbitrary in holding a person or corporation responsible for mental pain and suffering which is the result of the negligence of such person or corporation, and which result could have been reasonably anticipated. On the contrary, in our opinion the rule of decisions fixing such liability responds to the demands of justice as well as of sound public policy.

[5] In the absence of evidence to the contrary, it must be presumed that the law of the state of Colorado upon the question of the liability of a telegraph company for mental anguish caused by its failure to deliver a telegram is the same as the law of this state, and we are therefore not required to determine whether upon the facts of this case the law of the forum or that of the jurisdiction in which the breach of the contract occurred should apply. Such being the state of the record, the opinion of the Supreme Court of the United States in the case of Telegraph Company v. Brown, 234 U. S. 542, 34 Sup. Ct. 955, 58 L. Ed. 1457, has no application.

[6] We are relieved from the necessity of discussing at any length the constitutional question presented by the assignments by the well-considered and able opinion of Justice Hodges in the case of Telegraph Co. v. Bailey, 184 S. W. 519, which holds that our law permitting recovery for mental anguish in cases of this kind is not violative of the Constitution of the United States. We are in full accord with the views expressed in that opinion.

We have not deemed it necessary to discuss all of the assignments presented in appellant's brief, but only those which in our opinion presented the material questions involved in the appeal. All of the assignments have been considered, and none of them, in our opinion, should be sustained. The judgment of the court below is affirmed.

Affirmed.