## WESTERN UNION TELEGRAPH CO. v. HICKS. (No. 6977.)

(Court of Civil Appeals of Texas. San Antonio. June 6, 1923. Rehearing Denied June 27, 1923.)

**1. Telegraphs and telephones ☞68(5)—That wife was buried in another town than that telegraphed from held no defense.**

In an action for failure to promptly deliver telegram advising of death of plaintiff's wife, that wife was buried in another town than that telegraphed from was no defense, where it appeared that if the telegram had been promptly delivered plaintiff would have had ample time to attend her funeral.

**2. Telegraphs and telephones ☞54(4)—Time limit of 95 days for notice of claim held inoperative.**

In action for failure to promptly deliver telegram advising of death of plaintiff's wife, it was no defense that claim was not filed within the 95 days time for filing such claim fixed by agreement for transmission of the message,

where it appeared that plaintiff did not know of his wife's death until at least 6 days after filing of the telegram, which would have left him only 89 days within which to give notice of his claim, since Rev. St. art. 5714, provides that fixing a less period of time than 90 days shall be void.

**3. Telegraphs and telephones ☞68(5)—Delay in delivering message of wife's death held to create liability although message did not state place of burial.**

Failure to promptly deliver telegram advising of death of plaintiff's wife *held* to render telegraph company liable, although telegram did not state the place of burial, and the wife was buried in another town, where if the telegram had been promptly delivered plaintiff could have reached the place of burial in time.

**4. Telegraphs and telephones ☞37(1)—Advising sender that death message had been delivered, and failing to request better description, held gross carelessness.**

Where, when message advising of death of plaintiff's wife was received at the town where he was, telegraph company made only slight effort to locate him, and made no request upon the senders for a better description, as was the company's rule in such case, and senders, upon inquiry at the sending office, were informed the telegram had been delivered, the company was guilty of great indifference, neglect of duty, and gross carelessness.

**5. Telegraphs and telephones ☞66(2)—Testimony of rule to report back nondelivery of telegram held admissible.**

In action for failure to promptly deliver telegram advising of death of plaintiff's wife, testimony of rule of the company to report back to sender when telegram was not delivered was admissible.

**6. Telegraphs and telephones ☞37(10)—Duty to deliver and report nondelivery is implied in contract.**

A telegraph company's duty to deliver a message and advise the sender in case of its nondelivery is implied under the terms of its contract.

**7. Telegraphs and telephones ☞53—False report message was delivered made sender's negligence in not giving sufficient description immaterial.**

Whether or not sender of death message was contributorily negligent in not giving a better address than the name of the town where plaintiff was, if the company received the telegram, and, on failing to locate plaintiff, did not report such failure, but on the contrary actually notified the sender that the telegram had been delivered, its negligence was the proximate or contributing cause of the damage.

On Motion for Rehearing.

**8. Appeal and error ☞1140(2)—Power of remittitur exercised only in case of prejudice or passion.**

Under Rev. St. art. 1631, the power of the appellate court in cutting down verdicts is confined to cases where there is some indication of prejudice or passion on the part of the jury.

**9. Telegraphs and telephones  71—$2,800 for failure to deliver death message held not excessive.**

In action for failure to promptly deliver telegram advising of death of plaintiff's wife, whereby plaintiff was prevented from attending his wife's funeral, verdict of $2,800 *held* not excessive.

Appeal from District Court, Travis County; Cooper Sansom, Judge.

Action by J. H. Hicks against the Western Union Telegraph Company. From judgment for plaintiff, defendant appeals. Affirmed.

Francis R. Stark, of New York City, and Brooks, Hart & Woodward, of Austin, for appellant.

J. B. Robertson, of Austin, and Melasky & Moody, of Taylor, for appellee.

COBBS, J. Appellee sued appellant for damages for mental anguish caused by its alleged failure to deliver a telegraph message filed with it at Brownwood, Tex., April 28, 1920, directed to appellee at Georgetown, where he was then at work in a hotel, notifying him that his wife had dropped dead, which message was never delivered to him, but if it had been delivered to him with due diligence would have enabled him to attend his wife's funeral, which he greatly desired to do. The case was tried with a jury and resulted in a judgment in appellee's favor against appellant for the sum of $2,800.

[1] We do not think the court erred in overruling the exceptions that because the allegations showed that appellee's wife died at Brownwood, their home, and the telegram to appellee only notified him of her death and it appeared that the deceased wife was buried at Evant in Coryell county, Tex., a distant point from Brownwood, that appellant had no notice from the terms of the telegram that the funeral would not take place at Brownwood and any damages caused by a failure to attend the funeral at Evant were not within the reasonable contemplation of the parties in making the contract, and are too remote to sustain a recovery. The suit is predicated upon the appellant's breach of contract in not promptly delivering the telegram, the alleged proximate cause of the damage suffered. It was shown by the testimony if it had been diligently delivered appellee had ample time to attend the funeral or get in communication with his family in regard to her burial. This assignment is overruled.

[2] The second proposition is a contention that it affirmatively appears that the contract for the transmission and delivery of the message contained an agreement that appellant would not be liable for damages unless the claim were presented to the company in writing within 95 days after the message was filed for transmission, and as no such claim was filed within the period of time mentioned, the court erred in not instructing a verdict for appellant and instructing the jury such provision in the contract was void.

The testimony shows that the message was filed for transmission at 9:53 a. m., April 28, 1920, and that appellee did not have notice of his wife's death until 6 or 7 days after the filing of the message and did not see the message or receive it until 10 or 11 days after the death of his wife, when he called at the office of appellant in Georgetown and asked for it.

Upon this question we can see no good to come from exploiting our views or elaborating since the question here presented has been definitely settled. Tabor v. Western Union Telegraph Co., 104 Tex. 272, 137 S. W. 106, 34 L. R. A. (N. S.) 185; Western Union Telegraph Co. v. Smith, 61 Tex. Civ. App. 531, 130 S. W. 622.

The statute, article 5714, provides the time within which the notice shall be given is 90 days and in fixing for a less period of time shall be void and provides:

"In any suit brought under this * * * shall be presumed that notice has been given, unless the want of notice is especially pleaded under oath."

It is shown that the appellee did not know of the sending of the telegram or of the death of his wife until 6 or 7 days after the telegram was filed with the company and could not have filed a claim until at least 6 days after the filing of the message, which would have left him only 89 days within which to give notice of his claim for damages.

It was shown when the agent delivered the written message to appellee, about 10 days after his wife's death, he handed it back to the manager of appellant's office at Georgetown and told her to keep it, that he was going to make it cost the company all he could. However, we are not passing on the question as to whether or not that would be notice within the purview of the statute or the agreement. It is in the record, and we merely notice it in passing. We overrule appellant's assignment and second proposition.

[3] The facts upon which this suit was predicated substantially are that appellant at the time of the death of his wife was engaged in work in a hotel in Georgetown. His wife dropped dead in Brownwood on April 28, 1920, and about 9:45 a. m. of that day a message was delivered to appellant for transmission to appellee in Georgetown, a charge of 35 cents being prepaid, advising him of the death of his wife which appellant promptly transmitted over its wires to its agent for delivery, reaching Georgetown at 10:45 a. m. the same day. The telegram was not delivered to appellee until some 10 days

after the death of his wife. The two towns were only 150 miles apart. If the message had been promptly communicated, appellee would have reached Brownwood in time to have attended the funeral or communicated with his family, as he could have gone by railway or private conveyance.

Appellant could not find the name of J. H. Hicks in the telephone directory, but did find the name of J. R. Hicks, who lived several miles out in the country. Mr. J. R. Hicks was absent at the time, but appellant's agent communicated its contents to his wife, whereupon she told appellant's agent she thought it was not for her husband. Mrs. J. R. Hicks was requested by the agent to communicate its contents to Mr. J. R. Hicks when he came in and notify the agent and here the matter rested, and no further effort was made to locate appellee. On the same day, several times, the sons of appellee sought to ascertain if the message had been delivered by appellant's agent at Brownwood and they were advised the message had been delivered to appellee, and being so advised no further effort was made by the family to communicate with appellee, who was thus left in total ignorance of the death and burial of his wife. This also caused the family to abandon any further effort to advise him over the telephone or otherwise.

There are so many cases settling the question of liability for failure to deliver messages advising relatives of the death of loved ones that we can see no good reason for discussing them at length or in attempting to distinguish them. Here, it is true, the message contained no words advising the place of burial, such as the late Justice Neil was speaking about in Johnson v. Western Union Telegraph Co., 63 Tex. Civ. App. 245, 132 S. W. 814. Notwithstanding appellee's wife was not buried at their home town, Brownwood, but at Evant, in Coryell county, if the telegram had been delivered to appellee he would have had ample time to communicate with his family and could have secured information as to where and when she was to be buried, and certainly could have taken the train and reached there in time, for the sons had made arrangements to have him met at the train and taken on to Evant in time. Smith v. Postal Telegraph Co., 104 Tex. 171, 133 S. W. 1041, 135 S. W. 1147; Western Union Telegraph Co. v. Winter (Tex. Civ. App.) 184 S. W. 336 (writ of error refused); Western Union Telegraph Co. v. Ayers, 41 Tex. Civ. App. 627, 93 S. W. 199; Western Union Telegraph Co. v. Waller (Tex. Civ. App.) 47 S. W 396; Western Union Telegraph v. Kuykendall, 99 Tex. 323, 89 S. W. 965.

The telegram gave notice that appellee's wife was dead, and in all probability the husband would desire to attend her funeral wherever it was held, or might have some desire at least to communicate with his family concerning her burial, and that a failure to deliver would deprive him of that privilege. The evidence showed he could have boarded a train at Georgetown and arrived at Brownwood the night before her body was removed to Evant for burial. That all trains were on time, and if he had received the message he would have attended the funeral. The assignment is overruled.

[4] When appellant accepted the message and received the pay, a contract then arose between them that the message would be delivered. Georgetown was a small town, say of about 4,000 inhabitants, and appellee was employed in a hotel where he was at work within a block or so of appellant's office. After telephoning the message to Mrs. J. R. Hicks, who said the wire was not for her husband, appellant made no further effort to locate appellee, but still worse, made no further effort to ascertain whether J. R. Hicks, to whose wife appellant telephoned the message was the appellee or person for whom the wire was intended. When the wire was received nor at any other time was any request made, upon the sender from the Georgetown office, for a better description, nor was any report made by the Georgetown operator that appellee could not be located, but upon inquiry at appellant's Brownwood office by the family they were informed the wire had been delivered.

[5] Upon these facts it does not lie in the mouth of appellant to attempt to justify its negligence by saying here was no express agreement upon its part to report back to the sender of the message at Brownwood whether or not the same had been delivered, since their own rule required that very thing. Such testimony was relevant and material and wholly responsive to appellant's contention.

Some of the testimony objected to by appellant was a part of the testimony of Hillory Hicks in which he answered by deposition:

"Yes; I phoned the Western Union Telegraph Company's office in Brownwood some time before noon, but I do not remember the exact hour, to know if said message had been delivered; and I was informed by some one who answered the phone from that office that I had not received any reply from J. H. Hicks. In the early afternoon of the same day, April 28, 1920, I drove by the Western Union Telegraph Company's office in Brownwood, in an automobile in company with my brother, Ves Hicks, and Mrs. Johnnie Stevenson, to make further inquiry as to whether said message had been delivered to my father. I got out of the car, and my brother and Mrs. Stevenson stayed in the car in front of the office; and I went inside and made inquiry as to whether the message had been delivered to J. H. Hicks. Miss May Bowden, an employee of the Western Union Telegraph Company, informed me that the message had been delivered, or they would have had a 'service' on it. I pressed her about the matter to be sure about it, and she assured me that it had been delivered, or

they would have had a report or 'service' on it. I then left the office and reported the conversation to my brother, Ves Hicks, and we left in the automobile."

There was other testimony to the same effect from him and other witnesses.

It was shown by the witnesses and employees of the company familiar with its rules that when a telegram is received, and they are unable to make a delivery of it, to wire back to the office which sent the telegram and advise it that they had been unable to deliver the telegram and ask for a better address, but appellant did not do 'that in this instance. However, it did far worse than that, and informed the sender the message had been delivered. Western Union Telegraph Co. v. Davis (Tex. Civ. App.) 51 S. W. 258. The agent at Georgetown knew or could have known during that day it had not been delivered to appellee. Mrs. J. R. Hicks told the agent who phoned her that the message was not for her husband. This shows a case of great indifference, neglect of duty, and gross carelessness. Western Union Telegraph Co. v. Erwin (Tex. Civ. App.) 147 S. W. 608; Evans v. Telegraph Co. (Tex. Civ. App.) 56 S. W. 609; Swan Co. v. Telegraph Co., 129 Fed. 318, 63 C. C. A. 550, 67 L. R. A. 153.

That appellant owed a duty here and did not perform it, and hence became liable, is the well-settled rule of law in such cases. The agent at Georgetown made no inquiry for a better address, which it would have received upon proper inquiry. It exercised no proper degree of care to deliver it to appellee and contented itself with phoning to Mrs. J. R. Hicks, out in the country, who replied to the agent it was not for her husband, then misleading the sender by telling him it had been delivered, which caused him to believe it had been delivered and caused him to cease all further efforts to reach the appellee, which could have been done.

[6] The pleadings were sufficient on the question as to appellant undertaking to deliver the message and as to advising the sender of its nondelivery, if that be a material issue upon the facts shown, and that duty impliedly arose under the terms of the contract. Western Union Telegraph Co. v. Conder (Tex. Civ. App.) 138 S. W. 447; Western Union v. Saxon (Tex. Civ. App.) 138 S. W. 1091; Western Union v. Martin (Tex. Civ. App.) 191 S. W. 192.

[7] The sixth, seventh, and sixteenth propositions of appellant charge that when the message was delivered to it at Brownwood for transmission appellant requested the sender for a more definite and exact address of appellee, but it was not furnished. Appellant contends that had a local address been given at Georgetown, or information given that appellee was employed at some hotel, appellant would have been able to promptly

and diligently deliver said message, and that the refusal to give the definite information constituted contributory negligence proximately causing the damages complained of. The message was delivered to appellant at Brownwood, by P. G. Kaase who delivered it at request of appellee's daughter, and, when appellant's agent asked her for the address or street number of J. H. Hicks in Georgetown, told appellant's agent that she did not know appellee's street address, but as Georgetown was a small place he could easily be reached without a street address. Though appellant's agent at Brownwood made special request for the exact address in Georgetown, the sender could not give it other than that it was a small town and he could be easily located.

The court in its general charge submitted the question of contributory negligence, to which appellant excepted claiming it failed to define contributory negligence, etc., and requested a special charge on the contributory negligence of appellee in not giving the Brownwood agent a better local address of appellee in Georgetown. In the first place this charge is upon the weight of evidence. It narrowed and limited appellant's liability to one question that, notwithstanding under the circumstances it received the message for delivery, it in no event would be liable if the jury believed appellee's agent failed to given a better address of appellee in Georgetown to appellant's agent in Brownwood, and that "such failure was a contributing cause of the defendant's agent at Georgetown to promptly deliver said message * * * you will return your verdict for defendant." In other words they were instructed to return a verdict if the failure to give the local address at the time of sending the message was a contributing cause to appellant's negligence, notwithstanding appellant's negligence on the part of its agent in Georgetown in the matter of the nondelivery there. The burden of proof on the issue of contributory negligence was on appellant. There is no evidence that any one was guilty of negligence in not giving a better address at the time the message was sent, and it would have been error to submit that issue. Western Union Telegraph Co. v. Conder (Tex. Civ. App.) 138 S. W. 448; Western Union Telegraph Co. v. Bowen (Tex. Civ. App.) 76 S. W. 615. The charges requesting the court to instruct the jury to find for the defendant, in case they found the appellee guilty of contributory negligence, left out of consideration the negligence of appellant in reporting the delivery of the message. It made no difference whether or not there was contributory negligence on the part of appellee in not giving a better address if appellant received it, then, failing afterwards to locate appellee, did not report such failure, but on the contrary actually notified the sender that it had been

delivered, its negligence was the proximate or contributing cause.

In regard to appellant's contention that the judgment is excessive, we have to say considering the entire record, and certain testimony in connection with the amount of the verdict found by the jury upon which the judgment was entered for $2,800:

"The undisputed evidence showed that the appellee and Mrs. Hicks were married about 36 years before her death, that they had seven children; that on account of his health, appellee had been working in Georgetown, Texas, for a short time before his wife's death, intending to return shortly to Brownwood; that his wife had been dead about a week before he heard of it. Appellee testified: 'I wouldn't have missed my wife's funeral for any kind of money; I would have been willing to make any sacrifice to attend her funeral; * * * I loved my wife better than any human in the world. I have grieved and suffered over the fact that I was deprived of the privilege of attending her funeral; it has grieved me much. I have worried over it and I am still suffering mental anguish over the fact that I did not have the opportunity to see my wife before she was buried. * * * I testified on yesterday that my wife and I were married when I was about 20 and she was about 18. During all the years from then up to the time of my wife's death we have lived together as man and wife. I had worked during all that time to make a living for her and myself. Before I went to Georgetown, I had never been separated from my wife for over a month; I worked at Paint Rock for a month, and didn't see her during that time. That month I worked at Paint Rock and the time I was at Georgetown were the only occasions I had been away from my wife for any length of time after we were married.'"

There is no fixed rule for measuring damages to be allowed in such cases and the effect to the mind caused by disturbance and grief relating to the happiness and physical health of human beings, but such phenomena are recognized and given more and more weight by physicians. The finding of the jury ordinarily in such cases will only be passed upon to increase or diminish a verdict in cases where there is some evidence improperly influencing the size of the judgment. And there is no evidence in this case that should have improperly influenced the minds of the jury. The judgment is large, but the trial court who heard the testimony, and had the opportunity to observe the jury, allowed it to stand, and we can see no just ground for this court to diminish it.

We have carefully considered all the assignments and propositions of appellant, especially the complaint against the court's general charge and special requested charges of appellant, which the court refused. We think the general charge of the court is correct and correctly presented all the true and real issues in the case covering substantially all the issues demanded by appellant. Having so considered each and all the propositions and assignments presented and urged, we find no reversible error assigned, and the judgment is affirmed.

### On Motion for Rehearing.

[8] Article 1631, R. S., provides when any Court "of Civil Appeals of this state, and such court shall be of the opinion that the verdict and judgment of the trial court is excessive, and for that reason only, said cause should be reversed, then it should be the duty of said Court of Civil Appeals to indicate to the party in whose favor such judgment was rendered, or his attorneys of record, the amount of excess of such verdict and judgment; and said court shall, at the same time, indicate to such party, or his attorney, within what time he may file a remittitur of such excess; and, if such remittitur should be so filed, then the court shall reform and affirm such judgment in accordance therewith; if not filed as indicated then to be reversed."

The power of the appellate court in cutting down verdicts is confined to those cases where there is some indication of prejudice or passion, on the part of the jury. Railway v. Stevens (Tex. Civ. App.) 94 S. W. 397; Railway v. Hynes, 21 Tex. Civ. App. 34, 50 S. W. 624. So the established rule as to excessive verdict is, that an appellate court will not sustain excess unless there is some circumstance evidencing passion or prejudice. The circumstances may be as varied as the cases themselves.

[9] The facts in this case neither show passion or prejudice such as would justify this court in reversing and remanding in order to require a remittitur.

We have considered appellant's motion and do not believe there was any error committed, as contended, in the charges of the court given or charges refused. The issues are fairly presented in the court's charge and emphasize as well the questions sought by appellant to have submitted to the jury.

The motion is overruled.