**WESTERN UNION TELEGRAPH CO. v. HICKS.** (No. 583–4051.)

(Commission of Appeals of Texas, Section A. Oct. 29, 1924.)

1. **Telegraphs and telephones ⬦74(5)—Evidence held insufficient to require instruction that no damages recoverable for anger, vexation, or resentment.**

In action against telegraph company for failure to deliver message promptly, evidence *held* not sufficient to require submission of requested special charge that plaintiff could not recover damages because of any anger, vexation, or resentment toward defendant.

2. **Appeal and error ⬦1094(1)—Commission of Appeals may not disturb finding of Court of Civil Appeals that verdict was not excessive.**

Commission of Appeals may not disturb finding of Court of Civil Appeals that verdict was not excessive.

3. **Telegraphs and telephones ⬦54(4)—Time limit for notice of claim held no defense.**

In action for failure promptly to deliver telegram, advising plaintiff of death of his wife, fact that no claim in writing was filed within 95 days after filing of message for transmission as required by contract of transmission, *held* no defense, where, under facts, plaintiff could not have had as much as 90-day minimum set by Rev. Stat. art. 5714, in which to file claim after he learned of wife's death.

4. **Telegraphs and telephones ⬦51—Duty of sender of telegram to use ordinary care to effect delivery of message.**

It is duty of sender of telegram and of telegram company to use ordinary care to effect delivery of message to addressee.

5. **Telegraphs and telephones ⬦73(4)—Failure to submit question of sender's contributory negligence held to require reversal.**

In action for failure promptly to deliver message advising plaintiff of death of his wife, failure to submit whether sender used ordinary care in his effort to find exact location of plaintiff *held* to require reversal.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by J. H. Hicks against the Western Union Telegraph Co. The Court of Civil Appeals affirmed judgment for plaintiff (253 S. W. 565), and defendant brings error. Reversed and remanded.

Francis R. Stark, of New York City, and Brooks, Hart & Woodward, of Austin, for plaintiff in error.

J. B. Robertson, of Austin, and Melasky & Moody, of Taylor, for defendant in error.

CHAPMAN, J. About the 15th of March, 1920, J. H. Hicks, who was living in Brownwood, Tex., went to Georgetown, Tex., and secured employment as a table waiter in a hotel at that place, and continued in that work until after the 28th of the following April. The wife of Hicks remained at Brownwood. At 9:45 a. m. April 28, 1920, Mrs. Hicks died suddenly, and at 9:54 a. m. the agents of J. H. Hicks delivered to the agent of the Western Union Telegraph Company at Brownwood for J. H. Hicks this telegram:

"Brownwood, Tex., Apr. 28 1920.

"J. H. Hicks, Georgetown, Texas. Mother dropped dead at 9:45 a. m.

"[Signed]  H. Hicks."

Mrs. Hicks was buried at 2:30 p. m. April 29th. Hicks did not learn of the death of his wife until 6 or 7 days after she died, and did not receive the telegram until he called at the office of the telegraph company about 10 days after it was sent. J. H. Hicks brought suit against the telegraph company for the failure of the company to deliver the telegram, and claimed damages for mental anguish suffered by him on account of being deprived of attending the funeral of his wife. The telegraph company plead contributory negligence on the part of the agents of Hicks at Brownwood in failing to give a more definite and accurate address of J. H. Hicks upon their being requested to do so by the agent of the company at Brownwood. The trial in the district court resulted in a verdict and judgment in favor of plaintiff for $2,800, which was affirmed by the Court of Civil Appeals at San Antonio. 253 S. W. 565.

[1] The first assignment of error of plaintiff in error, Western Union Telegraph Company, complains of the failure of the trial court to give a special charge requested by it, requesting the jury to not assess in plaintiff's favor any damages because of any anger, vexation, or resentment toward the defendant company or any of its agents or employés which plaintiff may have felt or experienced by reason of the failure to deliver the telegram promptly. The law is well settled in this state that the plaintiff could not have recovered for any such damages as that mentioned, and, if the evidence had raised this issue, defendant would certainly have been entitled to this charge. The only evidence that might remotely tend to raise this issue is that, when the plaintiff, Hicks, received the telegram from the agent of defendant at Georgetown, about 10 days after his wife's death, he returned the telegram to her, telling her to keep it; that he was going to make it cost the company all that he could. The evidence shows that the plaintiff had learned of his wife's death some 3 or 4 days prior to this time, and had also learned that the telegram had been sent, and, of course, knew that it had not been delivered, and the plaintiff had sufficient time to deliberate over these facts and determine what cause of action he would pursue in regard to the failure of the telegraph company to deliver the message, and we think that the language used by him when he returned the telegram to the agent can be attributed to the fact that he had determined that he would bring suit against the company under the circumstances rather than to show any animus on his part toward any of the employés of the company, and we do not think that this isolated piece of evidence is sufficient to raise the issue submitted in this special charge.

[2] The second assignment of error complains of the action of the Court of Civil Appeals in refusing to disturb the verdict rendered in the trial court, and bases such complaint on this language used by the Court of Civil Appeals in discussing that question:

"The trial court, who heard the testimony, and had the opportunity to observe the jury, allowed it to stand."

The Court of Civil Appeals did use this language in discussing this issue, but we do not construe the language of that court to hold that it could require remittitur only when the trial court has not heard the testimony and has not permitted the verdict to stand, as claimed by plaintiff in error in this assignment, but by viewing both the original opinion and the opinion on the motion for rehearing of the Court of Civil Appeals we construe the holding of that court to be that they considered the facts in the case and held that the verdict under the facts was not necessarily excessive, and we understand that this court does not have jurisdiction to disturb this finding of the Court of Civil Appeals.

[3] The fourth assignment of error complains of the refusal of the trial court to instruct a verdict for defendant, for the reason that it affirmatively appears from the undisputed evidence that the contract for the transmission and delivery of the message contained an agreement that the defendant would not be liable for damages unless the claim for same was presented to it in writing within 95 days after the message was filed for transmission, and that no claim in writing was filed within said time. We think that our Supreme Court in the case of Taber v. Western Union Telegraph Co., 104 Tex. 272, 137 S. W. 106, 34 L. R. A. (N. S.) 185, clearly decides this issue against the contention of plaintiff in error. The message in that case contained the same stipulation as the one in this case, except that the time was 90 days instead of 95 days, and we take the following quotations from that case:

"Article 3379, as it relates to the time from which the ninety-day period should be computed is indefinite and not fixed with certainty, but we think such period may be ascertained with reasonable accuracy by applying the well-recognized rules controlling statutory construction. Among the many such rules laid down for the interpretation of our statutes will be found those which suggest that for the purpose of effecting the object of the statute a liberal construction should be given, and that search should be made for the intent of the Legislature in passing the act, having in view the remedy designed by the enactment of such statute. Keeping in mind the application of these rules and applying them to the statute under consideration we are of the opinion that the ninety-day period should be computed from the time the cause of action arose, and that such period was intended by the Legislature to be designated. The purpose of the Act was to fix a minimum period of ninety days from the time the cause of action arose in which notice of any claim for damages might be required by stipulation as

a condition precedent to the right to sue, and to declare as matter of law the invalidity of any contract undertaking to fix a shorter time than ninety days in which such notice is required to be given. * * *

"It is our opinion that even if the stipulation was not repugnant to the provisions of the statute by requiring the notice to be given 'within ninety days,' that the same is nevertheless void by virtue of the provision arbitrarily fixing the period from which the ninety days shall be computed at the time of filing the message, as contradistinguished from the time the cause of action arose as provided for in the statute as we construe its meaning."

We think that the wisdom of the holding of the Supreme Court in the Taber Case is clearly demonstrated by the facts in the instant case, for in this case the plaintiff did not learn of the death of his wife until 6 or 7 days after she died, and did not see the message until 10 days after she died, and therefore would not have had, under these facts, as much as 90 days within which to file his claim after he learned of his wife's death.

[4, 5] The seventh assignment complains of the refusal of the trial court to give what seems to be a proper special charge on contributory negligence. The trial court did not submit contributory negligence in its main charge. The evidence in regard to the receiving and sending of the message is this: The message, as stated, was delivered to the agent of the telegraph company at Brownwood about nine minutes after the death of Mrs. Hicks, and the agent of the company made request of the party who delivered the telegram for a more accurate and definite address of Mr. Hicks in Georgetown. The party who sent the message testified that he gave the best address that he could at the time he delivered the message. A daughter of Mr. and Mrs. Hicks who was living 15 miles distant from Brownwood knew where Mr. Hicks was located in Georgetown. This daughter arrived at Brownwood at about 11 a. m. of the morning that her mother died. H. Hicks, whose name is signed to the telegram, telephoned to the office of the telegraph company at Brownwood about 11 a. m. and made inquiry if any reply had been received on the message, and was informed that no reply had been received. He went to the telegraph office early in the afternoon of the same day, and made further inquiry as to whether any report had been received, and was informed that the message had been delivered or they would have had a "service" on it. No further inquiry was made of the operators at Brownwood in regard to the message, and no further effort was made by the relatives of Hicks to locate him at Georgetown. The message was promptly received at Georgetown, and upon receipt of it the employés of the company at that place referred to the telephone directory, and failed to find the name of J. H. Hicks, and then went to the post office and made inquiry as to the mail of J. H. Hicks, and was informed that some of his mail had been sent to the address of J. R. Hicks on a rural route and had not been returned. The employés of the telegraph company then telephoned the message to the residence of J. R. Hicks in the country, with request to let them know by telephone if the message was not intended for J. R. Hicks, and no further effort was made to locate J. H. Hicks. Georgetown was shown to be a town of about 3,000 inhabitants.

"The general rule as to the effect of contributory negligence applies where it is sought to recover damages from a telegraph company for negligence in the transmission or delivery of a message." R. C. L. 560.

"In an action by the sender of a message an insufficiency or error in the name or address of the addressee may preclude a recovery on the ground of contributory negligence, and the defense of such contributory negligence on the part of the sender has also been sustained in cases where the action was brought by the addressee, although the application of the doctrine in actions brought by the addressee and based upon the negligence of the company has been questioned. Negligence of the sender is no defense if it did not cause or contribute to the failure to deliver, and, conversely, it is not necessary that such negligence should be the sole direct and proximate cause of such failure; it being sufficient if concurring and combining with that of defendant it proximately contributes to such failure. It is not necessarily contributory negligence to send a message without a definite local address, particularly where the sender gives the best address that he knows or can with reasonable diligence ascertain." 37 Cyc. 1674.

In Western Union Telegraph Co. v. McDaniel, 103 Ind. 294, 2 N. E. 709, the message was addressed thus: "To Mrs. La Fountain, Kankakee." The facts showed that the message was intended for Lewis La Fountain, and that Kankakee was a place of 12,000 to 15,000 inhabitants. That case was brought for statutory penalties, but we think that the same principle as to contributory negligence would apply in that case as in the one we have under consideration, and in discussing the McDaniel Case the Supreme Court of Indiana made this statement:

"The appellee was guilty of negligence. His attention was called to the fact that the name of the person to whom the message was addressed should be given, and that the street and number should be stated. He failed to give either, and rested upon the supposition that she was well known. This was not such prudence and care as the law requires. If a man addresses a message to Mrs. Jones, or Mrs. Smith, in a city of twelve or fifteen thousand inhabitants, he exercises a degree of care much below the legal standard. It may possibly be that, if the telegraph company had accepted the message without calling the sender's attention to the insufficiency of the address, it could not be held that there was con-

tributory negligence, but here the sender of the message had his attention directed to the insufficiency of the address, and, instead of endeavoring to remedy the defect, elected to incur the hazard of its safe transmission. He was in fault, he assumed the risk, and he cannot make another suffer for the consequences of his own negligence. Slight care on his part would have provided the means of identifying the person to whom the message was sent, and having, after due warning, failed to exercise this care, he is in no situation to demand a penalty."

That contributory negligence applies in cases like the one we have before us was recognized by our courts of Civil Appeals in Hargrave et al. v. Western Union Telegraph Co., 24 Tex. Civ. App. 637, 60 S. W. 687, in which writ of error was denied by the Supreme Court and in Western Union Telegraph Co. v. Rawls (Tex. Civ. App.) 62 S. W. 136. Under this assignment the only question for us to determine is whether the evidence raises the question of contributory negligence on the part of the sender of the message, for, if it did raise this issue, then the defendant was entitled to a charge on this phase of the case. It is true that when the sender of the message went to the office of the telegraph company at Brownwood early in the afternoon of the day that the message was delivered he was informed that the message had been delivered to Mr. Hicks at Georgetown or they would have received a "service" on it, but prior to this time the sender of the message had doubtless seen his sister, who knew where Mr. Hicks was at work in Georgetown. It was the duty of the sender of the telegram and of the telegraph company to use ordinary care to the end that the message might be delivered to Mr. Hicks at Georgetown, and we think that it should have been submitted to the jury for them to determine whether the sender of the telegram used ordinary care in his efforts to find out the exact location of J. H. Hicks, and, if this matter had been submitted to the jury, they might have determined that a person of ordinary care would have made inquiry of the children of J. H. Hicks and wife, to whom he had access, as to the exact location of J. H. Hicks at Georgetown, and the evidence shows that, if the sender of the telegram, who was the son of J. H. Hicks, had made this inquiry of one of his sisters, he would have ascertained where J. H. Hicks was at work, and the jury might have found that, notwithstanding the fact that the message was telephoned to J. R. Hicks at Georgetown, it would have been delivered to J. H. Hicks, if the sender of the message had made this inquiry and had reported the result of the inquiry to the telegraph office.

We recommend that the judgment of the trial court and the Court of Civil Appeals be reversed and the cause remanded to the trial court.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.