## JEWELL v. EL PASO ELECTRIC CO.
### No. 2635.

Court of Civil Appeals of Texas. El Paso.
Feb. 25, 1932.

Rehearing Denied March 17, 1932.

John T. Hill, of El Paso, for appellant.

Jones, Goldstein, Hardie & Grambling, of El Paso, for appellee.

HIGGINS, J.

On April 12, 1930, C. P. Jewell sustained personal injuries in an automobile accident. He filed this suit to recover damages therefor. He died July 27, 1930, and his parents later made themselves parties plaintiff by amended petition containing two counts.

The first count is to recover the damages sustained by the deceased under the Survival Statute (Vernon's Ann. Civ. St. art. 2078 et seq.). The second count is under the Death by Wrongful Act Statute (Vernon's Ann. Civ. St. art. 4671 et seq.), it being alleged that Jewell's death was caused by the injuries sustained.

Briefly stated the accident occurred under the following circumstances:

The deceased was driving an automobile on United States 80 between Clint and Ysleta, going in the direction of Ysleta. The car stalled and was standing headed towards Ysleta. Two wheels, and about half of the car were upon the pavement. P. M. Armstrong drove up in a roadster car going towards Clint. Armstrong stopped his car on the opposite side of the highway, 15 or 20 feet down the road from Jewell's car.

Armstrong testified:

"So I suggested I would try to pull him, I had a chain in my car, and if he couldn't get it started, why, then they could send down and work on it, so I gave him the key to the back of my car and he got the chain out and came back and handed me the key and started across the road when the accident happened. That was a small chain. He got the chain out and came to the side of my car, to the door. That was on the side next to the road. I don't know which hand he had the chain in, I didn't pay any attention at the time, but I imagine in the same hand that we hurt. I knew his right hand was injured. After he handed me the key, he turned to cross to his car. He would have gone diagonally across the road, he would have had to have gotten to his car. After he handed me the key, I saw him start across the road and was surprised that he did start and hollered at him, I saw a car coming and hollered at him, and he jumped back without looking, he realized that a car was coming, I suppose, by me yelling, and jumped back, and I heard the chain rattle against the car. That is about all I know about the accident until I got out of my car, because it is a coupe and I couldn't see very well behind me. I could hear the chain rattle against the car, and I don't know that I saw the boy just as the car got even with him, but by the time I got the door open and out, he was leaning against my car. * * *

"Mr. Jewell came from across the road to my car and got my key, then he went be-

hind and took this chain out of the rear of my Chevrolet coupe. He relocked the back and had the chain in one hand and came by and handed me the key. When he handed me the key, this car Mr. Anderson was driving was coming down the road from the direction of Clint, going towards El Paso. I could see that car coming. I don't remember which way Mr. Jewell turned, I couldn't remember after the accident that day, I was asked and I couldn't remember whether he turned that way, away from Mr. Anderson's car, or towards it. I don't know whether he turned to the left or this way. He had reached a point, I should think, about the middle of the road when the accident took place. He was about half way between my car over here on the right and his car on the left and I yelled at him. When I yelled at him, he stopped suddenly. I don't know whether the chain in his hand flopped out from his hand when he made that stop, I don't know about that. The chain caught on the car because I had to walk about half way to where Mr. Anderson stopped to get the chain. As to why I was surprised when he started across the road— well, I had seen the car and just supposed that the young man had seen it, but he was behind my car and when he came around he was talking to me and didn't see it and I hollered at him. There was nothing between him and the on-coming car but my car and he walked around it. My car was not between him and the on-coming car after he came from behind my car. He had come from behind my car and had reached a point opposite the seat and handed my key to me and had turned away, going back towards his car with the chain in his hand, and had not taken as many as four or five steps, it wouldn't take that many to get to the middle, but probably two steps before the accident took place and before I hollered."

Chick Anderson, an employee of appellee, was driving the car which injured Jewell. The car did not strike Jewell, but in some way the chain Jewell was carrying caught the side of the car driven by Anderson and the ensuing jerk severely lacerated Jewell's hand; also jerked and wrenched him violently.

Anderson testified:

"When I made that 'S' turn, about a quarter of a mile away from these cars, is the first time I noticed them. I watched them from that time until the time of the accident. I watched them more closely for the reason that both cars were about half way on the paving almost directly opposite each other. Both cars were on the paving. The Jewell car was about half way on the pavement and was headed towards Ysleta. The Armstrong car was headed towards Clint, the opposite direction from the Jewell car. Assuming these pieces of paper represent the cars, Mr. Armstrong's car was about three-fourths on the pavement, there is a heavy sand pit on the side, it is about fourteen feet from the edge of the paving over to the canal and twelve from the edge of this pavement to the ditch on the opposite side. The back of Mr. Jewell's car was just a little in front of the back end of Mr. Armstrong's and I was coming this way, towards Ysleta. The width of the pavement there is eighteen feet, that includes a six inch concrete shoulder on each side. I would say the distance between the nearest point of the Jewell car to the nearest point on the Armstrong car was about eight or ten feet, just room for a car to go through with safety between the two cars. When I first saw those cars I was traveling around 30 or 35 miles an hour, coming towards El Paso. When I was about four or five hundred yards from them, I noticed somebody, who later proved to be Mr. Jewell, coming from his car, go over here and come around on the side of Mr. Armstrong's car and lean over the side of the car, and as I approached I honked my horn and kicked the clutch out and was coasting. When I got close, in 25 or 30 feet, I honked my horn again, because I hadn't seen where Mr. Jewell had went to. I was coasting and I wouldn't say how fast I was going, I wasn't under power. The next thing I saw was Mr. Jewell come from behind Mr. Armstrong's car, facing diagonally across, with a chain. I swerved my car as close as I could to Mr. Jewell's and one end of the chain, I have an idea, caught on the left rear fender of my car as I went by. There is a culvert here and a road comes in here and I drove around like that and back here and found Mr. Armstrong and Mr. Jewell standing at the back of the car. * * *

"When I noticed Mr. Jewell step in the road, I was just about even here in front of Mr. Armstrong's car. I honked my horn 20 or 30 feet back, I supposed he was going to stay back, I didn't know. Mr. Jewell had his back to me when he stepped out. I didn't sound my horn any more when I saw him, I swerved sharp to the right and threw my brakes on and went through. I was going ten or fifteen miles an hour when I passed through, I wouldn't be positive, I was watching the cars to see if anything would happen. I went as far to the right as I could, very near to the point of hitting Mr. Jewell's car. A person would have to be about the center of the road to get through. Mr. Jewell made a statement to me at the time of the accident as to how it occurred. As soon as he got in the car he says 'That is the first time in my life I ever pulled a stunt like that,' I asked what he meant, he says, 'Without looking to see if a car was coming.' I says 'I am very sorry, Mr. Jewell, it happened.' I asked if it was hurting much and he says 'No, I don't feel any pain yet.' I had more con-

versation with Mr. Jewell just outside of Dr. Milam's office after his wound was dressed, in the presence of Lee Palm, the traffic officer. * * * I went back and when Mr. Jewell came out he sat on the runningboard of my car, on the left hand side, and Mr. Palm was sitting on his right and I was on the left, and Mr. Palm asked him, he knew him personally, he says, 'Carl, I have heard Mr. Anderson's side, I want yours, and I am going to get Mr. Armstrong's. Who do you think is at fault?' He says 'Lee, I think it is more my fault than anybody else's.' He said 'It was more my fault than it was Mr. Anderson's.' "

Some of the issues of negligence submitted were found against the appellee, but it was also found that Jewell attempted to cross the road without keeping a lookout for automobiles approaching; that he was negligent in so doing which was a proximate cause of the accident.

Error is assigned to the failure to submit the issue of discovered peril.

■ It is doubtful whether appellant's pleadings are sufficient to raise that issue, but resolving this doubt in their favor we think it is not raised by the evidence. Jewell was never in a perilous position until he turned from Armstrong's car and started across the road. It appears from Anderson's testimony that when he was within 25 or 30 feet of Armstrong's car he sounded his horn because he did not know where Jewell was. The perilous situation must have arisen and been seen by Anderson later, and according to his testimony he then did 'all he could to avoid injuring Jewell. Though handicapped by cars on either side, he succeeded in avoiding a collision, and no injury would have been inflicted but for the chain in some way catching Anderson's car.

An examination of all of Armstrong's testimony corroborates Anderson and establishes that, when Jewell turned from Armstrong's car and started across the road, the car driven by Anderson must have been practically upon Jewell. We do not think the evidence sufficient to show that Anderson discovered the perilous situation of Jewell in time to have averted the injury by the use of the means at hand.

Error is assigned to the refusal to submit the issue of whether Anderson, in passing between the cars, was going at a greater rate of speed than 15 miles an hour; and, if so, was same the proximate cause of the injury? In this connection appellants invoke article 794, P. C., which reads: "All operators of motors vehicles in passing each other on the public highways shall slow down their speed to fifteen miles per hour."

■ This article, we think, has reference to moving cars and has no application to a car passing another that is standing. The lat-

ter is not in operation. Jewell's and Armstrong's cars were standing. As applied to a moving car passing a standing car, article 790, P. C., applies. This article provides: "No person operating or driving a motor or other vehicle upon the public highways shall pass any motor or other vehicle, person or thing on any public highway of this State at such rate of speed as to endanger the life or limb of any person or the safety of any property."

Whether Anderson passed Jewell on the highway at such a rate of speed as to endanger the life or limb of Jewell was submitted in question No. 1, and found in appellee's favor, and in response to the second question it was found that this was a proximate cause of the accident.

■ Furthermore, the refusal of the requested issues, as to driving faster than 15 miles per hour, is in no event reversible, for, if they had been submitted and found in appellee's favor, the judgment would nevertheless have been in defendant's favor in view of the findings upon the issue of contributory negligence.

■ The statement made by deceased after he had received surgical attention to the effect that he thought "it is more my fault than anybody else's" was a declaration against interest and admissible as such. Hovey v. See (Tex. Civ. App.) 191 S. W. 606; Smith v. Ry. Co., 34 Tex. Civ. App. 209, 78 S. W. 556.

■ The fourth and fifth assignments are to the effect that the findings that Anderson ran his car at such a rate of speed as to endanger the life or limb of Jewell, and that such speed was a proximate cause of the accident, contradicts other findings and nullifies the findings that Jewell was guilty of contributory negligence in attempting to cross the road without looking.

There is no inconsistency in these findings. It is the ordinary case of negligence on both sides proximately causing an injury.

■ Nor is there any merit in those propositions which assert there is no evidence to sustain the findings that Jewell's failure to look was a proximate cause of his injury, and that he was guilty of contributory negligence in so failing.

The facts stated and testimony quoted above refute these propositions.

Affirmed.

### On Rehearing.

Appellant ably insists the evidence raises the issue of discovered peril. We adhere to the view that Jewell was never in a perilous position until he turned from Armstrong's car and started across the road in the path of the approaching car driven by Anderson. Furthermore, Anderson was not required to

anticipate that Jewell would negligently go from Armstrong's car and place himself in a dangerous position by stepping in front of the approaching car. Upon this phase of the case the rules announced in the following cases apply, viz.: Houston & T. C. Ry. Co. v. O'Donnell, 99 Tex. 636, 92 S. W. 409; Ft. Worth & D. C. Ry. Co. v. Shetter, 94 Tex. 196, 59 S. W. 533; Chicago, R. I. & G. Ry. Co. v. Wentzel (Tex. Civ. App.) 214 S. W. 710; Gulf, C. & S. F. Railway Co. v. Sullivan (Tex. Civ. App.) 168 S. W. 473; Ft. Worth & D. C. Railway Co. v. Harrison (Tex. Civ. App.) 163 S. W. 332.

The motion for rehearing is overruled.