**SMITHEE et al. v. TEXAS & P. RY. CO.**

No. 3287.

Court of Civil Appeals of Texas. El Paso.

Jan. 2, 1936.

Rehearing Denied Jan. 23, 1936.

Edmund C. Yates, John J. Watts, and Scarborough & Ely, all of Abilene, and John L. Fowler, of Odessa, for appellants.

T. D. Gresham and R. S. Shapard, both of Dallas, Henry Russell, of Pecos, and Howard & Jackson, of El Paso, for appellee.

WALTHALL, Justice.

Clara Smithee, wife of appellant, T. E. Smithee, and daughter of appellants L. D. Tankersly and Bertha Tankersly, was instantly killed in a collision with a freight train operated by the agents and servants of the appellee, Texas & Pacific Railway Company, in the switching yard of appellee, in the town of Odessa, Ector county, Tex. The case was tried to a jury, and after the evidence was heard the trial court instructed a verdict for the appellee railway company, and on the return of the verdict as instructed, the court entered judgment for appellee. From the verdict and judgment appellants prosecute this appeal.

The undisputed evidence shows that immediately prior to the time of her death, Clara Smithee was walking in a footpath along the side of appellee's railroad track within appellee's switching yards in Odessa, on a footpath habitually and commonly used by the public and with, at least, the implied consent of the appellee. The footpath runs some 800 feet westerly from appellee's depot to and beyond a public street crossing of the railroad tracks. The freight train that hit and injured Clara Smithee was standing, taking water near the depot, and Clara Smithee, in walking, passed in front of the freight train and entered upon the footpath. She walked westerly on the footpath on the south side of the main line of railroad track a distance of some 600 feet when, about that point, she turned suddenly obliquely to her right and went upon the railroad track in front of the oncoming freight train. The petition describes Clara Smithee's movement at that point, and the cause of her going upon the railroad track, as follows: That the fireman and engineer "operated said freight train to within a few feet of the said Clara Smithee and then and there negligently * * * opened the wind valve on the said train and let out steam thereby frightening, terrorizing and placing the said Clara Smithee in a position of sudden peril to such an extent that the said Clara Smithee jumped from a position of safety directly into the path of the oncoming freight train," and that such negligence was the direct and proximate cause of the freight train striking her.

Appellants alleged other acts of negligence, such as operating the train at an unusual and dangerous rate of speed, failure to keep a careful lookout, failure to ring the bell and blow the whistle.

Clara Smithee, the deceased, was hit and killed by the engine of the train when she left the footpath and went upon the railroad track in front of the moving freight train about 600 feet west of the depot.

Without quoting the evidence, it shows that the unfortunate occurrence happened between 10 and 11 o'clock in the morning; the day was bright, the sun was shining; a strong wind was blowing from the southwest.

Appellants put on all the witnesses whose evidence was used on the trial. The witnesses testified fully on both direct and cross examination. The evidence shows that the track near the place of the injury was straight and clear of obstructions. Witness A. P. Clayton, the engineer of the train, called to testify by appellant, said, substantially: Had been in appellee's service 34 years; was engineer on the freight train and recalled the circumstances of his train hitting the deceased; was on the right-hand side of the engine and did not see anybody on the track; was going at a speed of between 10 and 12 miles an hour. On cross-examination said: Was pulling 49 cars, 47 loads and 2 empties; had been pulling trains over those tracks about 15 years; on coming into town took water at crane west of the highway crossing that runs through the center of the town of Odessa, and then pulled west; the track from that point is slightly downgrade, but the train was slightly over grade there, and we had to put on practically all power to move the train up to the point where the accident occurred; the train made much noise and vibration; gave two long whistles, and after getting down where nothing is in the way, he blew out the boiler on the right-hand side, about 600 feet from the water crane; the train traveled not over 150 feet during time steam was blowing off; the blowing off that mud cock makes noise; blowing off the steam is necessary, a rule requires it; he blew the whistle and rang the bell as he approached the crossing; the first thing that called the witness' attention that there was some person or obstruction or danger was the fireman hollering; witness was then pulling the cord, sounding the whistle for the crossing ahead, using his left hand; the fireman came across the cab as fast as a man can jump over and holler, wanted me to stop; witness said he shut off the throttle and applied the emergency brake as quickly as could be done; the emergency brake gives the full force of the braking power; it takes about three seconds to do the operation and about five seconds for the brake to take full effect through the entire train of that length; the witness testified to the probable distance the train would move in going at the speed of 10 and 12 miles per hour, and the distance at which the train could be brought to a stop; the train was on the main line and in the limits of the switching yard; the road-bed had a ballast of crushed rock which extended about 2½ or 3 feet beyond the rail; the passing siding and train track is to the left, about 10 or 12 feet away from the main track; the main track is on an elevated and a raised grade; said that the moment the fireman warned him of the danger, everything that could be used to stop the train was done, and as quickly as possible; said, "we made a good stop." On redirect examination: Witness did not know whether the deceased got scared and jumped in front of the train when witness blew the whistle; never heard one of the train crew say it looked like she jumped in front of the train immediately before the accident; testified about blowing the whistle; the brakes on the train were in good condition, up to the government standard; the brakeman said "somebody on the track, stop"; the brakeman was standing up riding between the cab and the tank in the gangway; he was on the side the woman was; the path on the south side is about 6 feet from the main line; witness would not consider this girl walking along within 6 feet of the rail in a position of probable danger; did not see the girl walking along the path.

J. L. Skalicky, fireman for appellee on the train involved, was called by appellants to testify. He testified substantially as follows: Was serving as fireman for appellee at the time Clara Smithee was killed; first saw her walking along between the tracks when witness got on the engine after taking water; she was down the track about 600 feet from where witness first saw her, down the track ahead of the engine; witness kept his eye on her, watched her all the way until she got in front of the engine; she was in between the tracks in the trail there, about 5 or 6 feet from the rail of the main line; the engine was about 30 or 40 feet from the girl when witness saw her start diagonally across the railroad (track); she went out of witness' sight when she was struck.

"Question: Did you know at that time when your engine was at that distance away from her that she was going to attempt to go across the tracks? Answer: I thought she did. She was going that way.

"Question: Do you mean to say at that time the engineer had completed blowing his signal? Answer: Just about.

"Question: And didn't blow any more signals after you hollered for him to stop? Answer: He didn't have time. He grabbed the brake valve."

Witness said that at no time did the deceased do anything that would indicate that she was aware of the approaching engine; that trail isn't exactly straight, it winds and in places gets closer and in places farther away (from the track); the pilot beam lacked about 30 or 40 feet of being up to where she was at the time she was walking; had the train gone on by and she had continued her same course, the pilot beam, when the train got to her, would have been 3 or 4 feet from her; I would not consider her in a point of probable danger; she did not look back.

On cross-examination witness said: When an engine is working it makes a great deal of noise and vibration when pulling a heavy load; the whistle was sounded; testified as to the rock ballast as being 4½ feet south of the rail; before she started to go upon the track he did not have the slightest idea she would go upon the track; she started across angling, at the same speed she was walking, did not jump or scream or throw up her arms; she took about three steps before she got out of my sight; when she started toward that track he hollered "as quick as I realized she was starting toward the track"; witness said he hollered and leaped and he (the engineer) understood his signals; the engineer applied the brakes instantly.

Appellants put on other witnesses who testified. Witness W. F. Rose saw deceased as she walked along the footpath and said she was about 3 feet from the main line when the train was about 40 or 50 feet back of her; at that moment he heard three short whistles; deceased was turned sideways and did not look back; thought the train was running 20 or 25 miles an hour; made other estimates of distances; saw deceased a second before the accident; she was on the rock (ballast) and started across; witness was 100 yards away on the passing track shoveling gravel.

Witness O'Connor testified: Said he heard the brakeman say to the engineer in speaking of deceased: "She threw her hands up in front of her and looked like she jumped right in front of the engine." Some other witness testified as to the distances a freight train such as this could be stopped going at a speed of 10 or 12 miles an hour; and at a shorter distance than the train was stopped in this instance.

## Opinion.

Appellants present a number of propositions submitted that the trial court was in error in instructing the jury for defendant, appellee here. Appellants insist that there was evidence offered sufficient to authorize the finding that the train that killed deceased might have been stopped at a shorter distance than it was stopped, and that it was not so stopped; that the court was not required to accept the conclusion of the trainmen that they did all they could to stop the train within the shortest distance possible; that the issue was one of fact for the jury; that under the evidence a recovery by appellants was authorized on the theory of discovered peril; that the position of deceased in walking along the footpath was sufficiently perilous to have required appellee to take steps to avert the peril without waiting to see whether her peril would become inescapable by reason of her changed position and the impossibility of stopping the train in the distance required; the evidence does not show that deceased was guilty of contributory negligence as a matter of law. Appellants present other propositions, similar to the above, but we think they would all come under the theory of those stated above.

All the evidence shows that the pathway along which the deceased was walking was between the tracks of the main line on which the train was moving and the passing tracks on the south side of the main line, and the width of the space between the two tracks made it reasonably safe for deceased while walking on the path. There is no evidence in the record that the path at any point led across the tracks of the railroad. The appellants' petition alleges that when deceased turned from the path to go upon the railroad tracks she left a place of safety and went directly onto the railroad tracks and was killed. There is nothing in the evidence to indicate that deceased intended to leave the path and go upon the tracks in front of the approaching train, before she did so.

464

The only question presented under the evidence we think is that of discovered peril at the time deceased turned from the path and went upon the tracks, and the effort made by the trainmen to stop the train to avoid striking deceased.

The evidence shows that the fireman on the train saw the deceased and watched her as she walked along the footpath for a distance of some 600 feet, and saw her as she suddenly left the path and went upon the tracks, at which place she went out of his sight in front of the engine, at an estimated distance of some 30 or 40 feet in front of the train moving at an estimated speed of 10 or 12 miles an hour. The engineer never had seen the deceased and from his position on the engine could not see her, and knew of the danger and peril of something on the tracks only when the fireman hollered to him to stop the train. The fireman and the engineer each testified in detail to what was done to stop the train, and that what was done was done quickly on discovery of the peril of deceased, and with the use of all the means at hand. If what the fireman and the engineer testified to constitute a perfect defense, under the doctrine of discovered peril, the court was not in error in instructing the verdict, unless their evidence is controverted, or some fact is sufficiently made to appear that would take the case to the jury.

Appellants suggest that the court did not necessarily have to believe the evidence of the fireman and engineer, and that there was evidence that the train could have been stopped at a less distance than it was stopped, and that had the train been stopped at a less distance that it was the death of deceased would not have occurred.

■ There is nothing in the evidence to reflect upon the truth of the evidence of the fireman and the engineer; they were put upon the stand as witnesses by appellants, and without their evidence it is not made to appear that they discovered the peril of the deceased at any time. The burden was on appellants to show that appellee ought to have known or discovered the peril but that appellant actually perceived it. Texas & Pacific Ry. Co. v. Breadow, 90 Tex. 26, 31, 36 S.W. 410. Mere negligence or failure to discover the peril does not invoke the doctrine of the new duty of discovered peril. Northern Texas Traction Co. v. Singer (Tex.Civ. App.) 34 S.W.(2d) 920, 923; W. A. Mor-

gan & Bros. v. Missouri, K. & T. Ry. Co. of Texas, 50 Tex.Civ.App. 420, 110 S.W. 978; Hawkins v. Missouri, K. & T. Ry. Co. of Texas, 37 Tex.Civ.App. 633, 83 S. W. 52.

■ The other suggestion made by appellants is that the evidence of witness W. L. Teague is to the effect that the train could have been stopped at a less distance than the engineer said it could have been and was stopped.

We have carefully studied his testimony. To say the least of it, the evidence of the witness is not clear and is somewhat confused. But if his evidence is to the effect, as claimed by appellants, that the train could have been stopped at a less distance than as stated by the engineer, and at a less distance than it was stopped, the question is: Would such evidence be sufficient under our practice to take the case to the jury on the issue of discovered peril? We think not. If the train could have been stopped at a less distance than it was stopped, the evidence of witness Teague would tend only to contradict the evidence of the fireman and engineer as to the distance within which the train could have been stopped after discovering the peril, with all of the means at hand applied, and would be only an inference, a bare suggestion, that trains could be stopped at a less distance, while the rule seems to be that the party inflicting the injury must exercise ordinary care in the use of all the means at hand having due regard for the safety of himself and others, to avoid the injury. We do not understand the rule to be, and it is not so claimed by appellants, that, to avoid liability, the engineer must have actually stopped the train within any given distance, but as stated he must have used ordinary care to do so, and by the use of the means at hand. The rule seems to be directed to the use of the means at hand rather than to the result.

There is no suggestion in the evidence, other than that of the witness Teague as to the distance within which the train could have been stopped, that the fireman did not act promptly in notifying the engineer of the peril, or that the engineer did not promptly shut off the steam and apply the brakes; the only evidence offered shows that both acted promptly.

In the case of Markowitz v. Metropolitan St. Ry. Co., 186 Mo. 350, 85 S.W. 351, 353, 69 L.R.A. 389, by the Supreme

Court of Missouri, it is said that the law requires more than the showing of a mere possibility that the accident might have been avoided in order to bring a case within the humanitarian doctrine announced in the cases referred to. It is there said: "An argument is built upon the estimates of witnesses as to the distance the car was from the horse when he got on the north track and the distance in which it was possible to have stopped the car after the motorman saw the horse on that track, and the conclusion is drawn that the car was 20 or 25 feet distant, and could have been stopped in 15 feet." The court said the so-called estimates were little, if any, better than guesses; that the motorman spoke with precision when he said that when he saw the horse was coming on the north track he reversed the power, applied the brakes, and stopped the car in the shortest time possible. The court said that in no view of the case could a verdict for the plaintiff be sustained.

■ We entertain the same opinion of the case at bar. Under our practice the court properly could, and we think did, under the evidence, instruct the verdict. No other judgment could properly have been entered.

The case is affirmed.