## YOUNG v. DALLAS RY. & TERMINAL CO.

### No. 12819.

Court of Civil Appeals of Texas. Dallas.

Jan. 20, 1940.

Rehearing Denied Feb. 17, 1940.

Malone, Lipscomb, White & Seay, of Dallas, for appellant.

Burford, Ryburn, Hincks & Charlton and Logan Ford, all of Dallas, for appellee.

LOONEY, Justice.

Gertrude C. Young appealed from an adverse judgment rendered in her suit against the appellee, Dallas Railway & Terminal Company, to recover damages for personal injuries sustained when struck by the rear end (overhang) of one of appellee's street cars as it rounded the curve off of Elm Street onto St. Paul Street in the City of Dallas. It seems that appellant boarded the car at Elm and Akard Streets and proceeded east on Elm three blocks to St. Paul, where she alighted from the front end of the car onto, and was standing within, the safety zone (established by the City of Dallas, adjacent to the street car track on the south), waiting for traffic to clear between the safety zone and the south curb on Elm Street, when struck by the overhang of the car, receiving the injuries of which she complained.

Appellant alleged that appellee was guilty of various acts of negligence, invoking, among others, the doctrine of discovered peril. Appellee's answer was a general denial and pleas of contributory negligence. The jury found appellee guilty of actionable negligence in two respects, as follows: (1) That the operator of the car turned same from Elm onto St. Paul Street before appellant could safely leave the safety zone because of the automobile traffic passing between her and the south curb of Elm Street; and (2), that appellant was not afforded a reasonable opportunity to get beyond the point of danger from the movement of the car. The jury also found that appellant was guilty of contributory negligence, as follows: (1) That she failed to keep a proper lookout for the overhang of the street car as it rounded the curve from Elm onto St. Paul Street, and (2), in assuming a position so near the rail (of the track) that she was struck by the overhang of the car as it rounded the curve. On the issue of discovered peril, the jury found that, while the operator of appellee's car discovered appellant's perilous position in time to have avoided the injuries by the exercise of ordinary care in the use of all the means at his command, consistent with the safety of the car, its occupants and himself, yet finding that the operator of the car did not fail to exercise ordinary care in the premises, made no finding on proximate cause as it pertained to that issue.

Appellant filed a motion for judgment non obstante veredicto; appellee also filed a motion for judgment, on the verdict of the jury, and, in the alternative, non obstante veredicto. Appellant's motion was overruled, and that of appellee for judgment on the verdict was sustained, and accordingly, judgment was rendered that appellant take nothing, from which she duly perfected this appeal.

Counsel for the parties have filed able and exhaustive briefs, for which we express appreciation. Appellant urges 21 propositions, based upon 26 assignments, and appellee urges 19 counter-propositions, besides 14 cross-assignments urged as propositions. The several questions raised are thoroughly and adequately briefed, but, as we have reached the conclusion, after a

thorough consideration of the cause, that the 'court below should have instructed a verdict for appellee, we do not deem it necessary to discuss but two questions as a vindication of the conclusion reached; that is, (1) Was appellant guilty of contributory negligence as a matter of law?; and (2), was the evidence sufficient to raise the issue of discovered peril? We think it obvious that appellant was guilty of contributory negligence as a matter of law, and that the evidence was not sufficient to raise the issue of discovered peril, hence the other questions raised become immaterial and need not be discussed.

 The material facts bearing upon the question of contributory negligence are these: The City of Dallas established a safety zone adjacent to and south of the railway track at the intersection in question. The zone is 72 feet in length, 8 feet and 3 inches in width, is marked by mushroom-shaped metal buttons or discs, 19 in number, 12 inches in diameter, placed 4 feet apart and raised sufficiently above the surface to prevent automobiles from invading the zone. The zone had a clearance of at least 3 feet between the outer edge of the overhang and the south line of the safety zone, at the point of the greatest overhang of the car as it curved to the left from Elm onto St. Paul. Appellee company had also installed within the safety zone, metal buttons 3½ inches in diameter, level with the surface of the street, to indicate the limit or outward sweep of the overhang of its largest cars.

Appellant testified, in substance, that she had been riding street cars in Dallas for thirty years; that, on many occasions during the last five or six years, she had ridden cars past the Elm and St. Paul Street corner, and had watched the car take the left turn; was familiar with the overhang of the car, and, a number of times, had alighted from the car as she did on the occasion in question, and stood in the safety zone as the car turned from Elm onto St. Paul, but had never received injuries before; did not know what struck her until told afterwards; that she made no effort to observe the overhang of the car on the occasion, although was aware, in a general way, of the movement of the car; also knew of the existence of the buttons indicating the sweep of the overhang as it turned the curve, but did not observe the buttons on the occasion in question, nor did she look to the rear of the car, or make any effort

to observe the overhang; testified that she alighted from the car and took two or three steps away from it; was in the safety zone 25 or 30 seconds before being struck; that two other passengers alighted at the same time—a man and a woman; the man took two or three steps down by the side of the car, the woman stood close to appellant in the safety zone, but neither of the other parties was injured.

The material portions of appellant's testimony will doubtless be best understood as she gave it in "Q. & A." form, as follows:

"Q. Now, when you got off of the car did you get both of your feet off the street car, Miss Young? A. Yes.

"Q. Did you get them both safely on the ground? A. Yes. * * *

"Q. Are you able at this time, Miss Young, to tell the jury how many steps you took before you were struck after you reached the pavement? A. I am not positive; two or three. * * *

"Q. And, did I understand you to say on direct examination this morning, that you took two or three steps, or did—was I mistaken about that? A. Two or three.

"Q. Two or three steps from the street car? I didn't hear your last statement. A. Yes. * * *

"Q. Now, while you were waiting this period in the safety zone there, did you turn around and look back towards the street car at any time? A. Not that I recall.

"Q. You don't recall ever having done that? A. No.

"Q. Do you recall turning to the—to your side and looking at the rear end, the furtherest extremity of the street car at any time during that twenty to twenty-six seconds you were there? A. No, I don't. * * *

"Q. Did you at any time see the street car—the rear end of the street car before you were struck by it? A. No. * * *

"Q. Now, have you ever seen a street car make a left hand turn, and watch the overhang of it as it comes around? A. Yes, I have watched them. I have seen it.

"Q. What is that? A. I say, yes, I have seen it.

"Q. Have you seen that happen? A. Yes.

"Q. Did you—have you ever noticed a street car, which made a left hand turn,

whether or not the overhang did not extend out beyond the track further than it did when it went straight? A. Yes.

"Q. You have seen it when it did not do that? A. No, not when it didn't. It usually does.

"Q. You know that to be a fact, do you, Miss Young? A. Yes. * * *

"Q. Just tell the jury, if you will, please, how much you have observed the operation of a street car, as respects the car turning to the left, and the overhang extending out beyond the track. A. As much as any street car passenger in that length of time that that comes under your observation. You don't make any special study of it.

"Q. But, you were familiar with that fact, and knew about it. Is that correct, Miss Young? A. Yes. * * *

"Q. Miss Young, did you realize and know then that street cars do turn to the left off of Elm onto St. Paul around the Athletic Club Building there? A. Yes.

"Q. How long have you known that cars turned to the left off of Elm onto St. Paul? How long have you known of existence of that fact; that that is a course some of the cars do take? A. I don't know exactly how long; for some time.

"Q. Would you give—had you known it for some time before this accident took place? A. Yes. * * *

"Q. Did you ever get on the street car at St. Paul and Elm, and have it turn to the left off of Elm onto St. Paul? A. The Oak Lawn car.

"Q. The Oak Lawn car? A. Yes.

"Q. You have done that, have you? A. Yes.

"Q. For what period of time have you done that? A. During the time I lived in Oak Lawn. * * *

"(Re-Direct) Q. Miss Young, he was asking you about your previous experience with street cars. Had you ever, prior to June 26th, 1937, got off of a street car of the size and dimensions of this street car, into a safety zone, with the traffic signals green and a string of traffic going by, and attempted to stand in the zone while the car made a left turn onto St. Paul Street, or any other street off of the street you were on? A. I very probably have. I think I have.

"Q. Do you know whether you ever had that experience before, or not? A. Yes, I have.

"Q. Had you ever done so on this particular corner? A. I have been on that corner so often. I think I have. * * *

"(On Re-cross Examination) Q. But, you have stood in that safety zone, and got off a number of cars there a number of times? A. Yes.

"Q. On these other occasions you were never struck by the overhang, were you? A. No, sir.

"Q. This is the first time you have ever been struck by the overhang? A. Yes."

The evidence shows that, there existed in the safety zone, a space 3 feet in width, over which the overhang of the car did not extend in making the curve off of Elm onto St. Paul Street. The traffic officer of the city, who served at that corner, testified that he had often stood in the safety zone there and had never been struck by the overhang of the car, and that persons waiting for an opening in the traffic in order to cross the street, customarily stood there as cars rounded the curve. After alighting from the car and ceasing to be a passenger, appellant was absolute master of her own conduct. She could have stood in a place of absolute safety, as she had done on previous occasions, as her fellow passengers did on the occasion in question, as often had been done before by the traffic officer and others. Her admissions show that she exercised no foresight, and seems to have been wholly disregardful of her own safety. The fact that appellant was struck by the overhang shows, inescapably, that she negligently walked and stood in a position of danger, that subjected her to the injuries received. We are of opinion, therefore, that she, alone, was responsible for the accident, hence guilty of contributory negligence, as a matter of law.

In the case of Townsend v. Houston Electric Co., Tex.Civ.App., 154 S.W. 629, writ refused, the El Paso Court held (quoting from syllabi) that: "Where plaintiff, about to board a street car, got too close to the track, and was struck by the overhang of the fender as the car was rounding the curve, he was negligent, as a matter of law, and therefore could not recover for negligence of the motorman in failing to keep a proper lookout." Citing the Townsend case, and others from the states of

California, Iowa, Kansas, Kentucky, Missouri, New Jersey, New York, Rhode Island and Washington, the doctrine is announced in 55 A.L.R. 487, that: "It is generally held that one who stands near enough to a car track to be struck by the overhang of the car as it rounds a curve is guilty of contributory negligence."

The material facts bearing on the issue of discovered peril are these: The operator of the car testified, in substance, that he did not realize appellant was in a perilous position and, under the circumstances, would have thought such an injury impossible; that when he saw her last, before the injury, she was in the act of walking away from the car, toward the south curb of Elm Street, saw her no more, as his attention was directed to the westbound traffic approaching on his left as he made the turn from Elm onto St. Paul. The operator was not contradicted by any witness, but, in a sense, was corroborated by appellant who also testified that, after leaving the car, she took two or three steps in the direction of the south curb on Elm Street and did not turn, or look back.

It is well settled that the doctrine of discovered peril is not applicable in the absence of a showing of actual knowledge, on the part of the person causing injury, of the peril of the party injured, and such knowledge or realization being absent in the instant case, it is our opinion that the issue of discovered peril was not raised by the evidence. See Texas & P. Ry. Co. v. Breadow, 90 Tex. 26, 36 S.W. 410; Fort Worth & D. C. Ry. Co. v. Shetter, 94 Tex. 196, 59 S.W. 533; San Antonio & A. P. Ry. Co. v. McMillan, 100 Tex. 562, 102 S. W. 103.

Appellant insists, however, that a person is in a perilous position when pursuing a course reasonably indicating that serious injury will result. The effect of the testimony of the operator is that, when he last saw appellant, she was walking away from the car, her back turned, and that, after the stop for 20 to 30 seconds, he started the car around the curve, had no knowledge whatever that appellant was in a perilous position, or that she had been injured, until informed by a passenger about a block away from the place of the accident. As appellant was not in a perilous position when last seen, and nothing reasonably indicating that she would be injured by the overhang of the car, the operator was not required to anticipate that she would negligently place herself in a position of peril.

In Fort Worth & D. C. Ry. Co. v. Shetter, 94 Tex. 196, 59 S.W. 533, considering a similar situation, the Supreme Court held that, there must be evidence to show knowledge by the person causing the injury of the perilous position of the person injured (not mere lack of care to discover it), in order to justify the submission of the issue of discovered peril as a ground for recovery; and further, that the person causing the injury is not bound to anticipate negligent conduct on the part of the person injured. The same doctrine is announced by the Supreme Court in Houston & T. C. Ry. Co. v. O'Donnell, 99 Tex. 636, 641, 92 S.W. 409, and in Jewell v. El Paso Electric Co., Tex.Civ.App., 47 S.W.2d 328, 330, with full citation of authorities.

However, appellant contends that, the jury could properly have disregarded the testimony of the operator of the car and found, notwithstanding his testimony to the contrary, that, in fact, he did know of appellant's perilous position at the time the car curved from Elm to St. Paul Street. The fault with this contention is that there is nothing in the evidence that reflects upon the operator, or that disparges the truth of his testimony. The record, in our opinion, is barren of any evidence authorizing the submission of the issue, or that would have justified a finding by the jury in opposition to the testimony of the operator of the car. See Fort Worth & D. C. Ry. Co. v. Shetter, 94 Tex. 196, 199, 59 S.W. 533, 535; Cobb v. Texas & N. O. R. Co., Tex.Civ.App., 107 S.W.2d 670, 674; Smithee v. Texas & P. Ry. Co., Tex.Civ. App., 89 S.W.2d 461, 464; Great Southern Life Ins. Co. v. Dorough, Tex.Civ.App., 100 S.W.2d 772, 776.

So we conclude that appellant was guilty of contributory negligence, as a matter of law, and further, that the issue of discovered peril was not raised by the evidence. If correct in these conclusions, all other assignments, propositions, cross-assignments and counter-propositions become immaterial, and need not be considered. We conclude, therefore, that the judgment of the trial court was correct, should be affirmed, and it is so ordered.

Affirmed.

### On Motion for Rehearing.

Appellant has filed a lengthy motion for rehearing, challenging the correctness of

our conclusions as to law, also, at least in one respect, challenges the correctness of a conclusion of fact, contending that it is in conflict with the undisputed facts as disclosed by the record.

Among other conclusions of fact, we made the following: "The City of Dallas established a safety zone adjacent to and south of the railway track at the intersection in question. The zone is 72 feet in length, 8 feet and 3 inches in width, is marked by mushroom-shaped metal buttons or discs, 19 in number, 12 inches in diameter, placed 4 feet apart and raised sufficiently above the surface to prevent automobiles from invading the zone. The zone had a clearance of at least 3 feet between the outer edge of the overhang and the south line of the safety zone, at the point of the greatest overhang of the car as it curved to the left from Elm onto St. Paul." Appellant contends that our conclusion that, "The zone had a clearance of at least 3 feet between the outer edge of the overhang and the south line of the safety zone, at the point of the greatest overhang of the car as it curved to the left from Elm onto St. Paul", is in conflict with the undisputed facts, contending that, "Instead of having 'at least 3 feet', as observed by this Court, it appears conclusively that so far as the safety of a person attempting to stand in this zone is concerned, instead of having at least 3 feet, as observed by this Court in its opinion, such person in reality had only 2 feet and 2 inches".

We see no occasion for a misunderstanding in regard to the fact under consideration. Instead of saying that the zone had a clearance of at least 3 feet between the outer edge of the overhang and the south line of the safety zone at the point of the greatest overhang of the car as it curved, we could have said with absolute accuracy that it had a clearance of at least 3 feet, 2 inches. As will be observed from our conclusions, there were 19 metal discs, 12 inches in diameter, placed 4 feet apart, that described the safety zone, and at the particular place involved, if one stood against the inner rim of one of these discs, the clearance would have been reduced by 12 inches and, as stated by counsel for appellant, the clearance would have been 2 feet and 2 inches; but, at all other places in the zone, between these metal discs, the clearance was 3 feet, 2 inches. However, even if the clearance were only 2 feet, 2 inches, as contended by appellant, we see no reason why any person, regardful of his or her safety, could not have stood in a place of safety.

After considering all grounds urged for rehearing, appellant's motion is overruled.