**ROBINSON DRILLING COMPANY,**
Appellant,

v.

**Clifton N. THOMAS,**
Appellee.

No. 3898.

Court of Civil Appeals of Texas.

Eastland.

Sept. 11, 1964.

Rehearing Denied Nov. 27, 1964.

lease covering said land and operates same for the production of oil and gas. Plaintiff alleged and set out six independent claims of damages to his land occurring at different locations thereon from October, 1961, to January 1963. At the close of the evidence, defendant filed a motion for an instructed verdict, which was overruled. The court then submitted the case to the jury on special issues and, based upon the verdict, judgment was rendered for the plaintiff in the sum of $1,000.00 The defendant's amended motion for new trial was overruled by operation of law and the defendant has appealed.

The special issues, upon which the judgment was based among others, were as follows:

"Special Issue No. 1: Do you find from a preponderance of the evidence that the defendant, through its agents, servants and employees, permitted oil to escape from its Woodward Well No. 3, while servicing it in October of 1961? Answer: Yes."

In answer to issues 2 through 5 the jury found that such action of the defendant constituted negligence proximately causing permanent damage to appellee's land, and that by such action appellant used more land than was reasonably necessary in conducting its operations on the land.

R. H. Ratliff, Colorado City, Rosser & Carroll, W. James Rosser, Snyder, for appellant.

Park, Hemphill & Adams, David D. Adams, Snyder, for appellee.

COLLINGS, Justice.

This is a damage suit brought by Clifton N. Thomas against Robinson Drilling Company. Plaintiff alleged that he was the owner of a quarter section of land in Scurry County and engaged in the actual cultivation and farming of said land; that the defendant is and was the owner at times material hereto of an oil, gas and mineral

"Special Issue No. 19: Do you find from a preponderance of the evidence that the defendant, through its agents, servants or employees, cut the firewall around the defendant's tanks in the N/2 of the NW/4 of Section 141, and permitted oil and waste to escape upon the plaintiff's land? Answer: Yes."

In answer to special issues 20 through 23 the jury found that such action of the defendant constituted negligence proximately causing permanent damage to appellee's land, and that by such action appellant used more land than was reasonably necessary in conducting its oil operations on said land.

"Special Issue No. 25: Do you find from a preponderance of the evidence that defendant, through its agents, servants or employees, failed to replace the firewall after installation of its storage tanks at that part of that lease designated by defendant as 'Thomas A & B? Answer: Yes."

"Special Issue No. 27: Do you find from a preponderance of the evidence that plaintiff's land was permanently damaged for farming purposes on account of oil and water flowing from these tanks, if you have so found? Answer: Yes."

In answer to issues 26 through 29 the jury found that such action of the defendant constituted negligence proximately causing permanent damage to appellee's land, and that by such action appellant used more land than was reasonably necessary in conducting its oil operations on the land.

In answer to special issue 30–A the jury found that on January 24th, 1963 and at times thereafter the shipping line extending south from a tank battery on the south part of appellee's land was owned, controlled, and maintained by appellant Robinson Drilling Company.

"Special Issue No. 31: Do you find from a preponderance of the evidence that defendant, through its agents, servants, or employees, reburied a rusted shipping line on plaintiff's land prior to the break on or before January 24. 1963? Answer: Yes."

In answer to special issues 32 through 35 the jury found that such action of the defendant constituted negligence proximately causing permanent damage to appellee's land, and that by such action appellant used more land than was reasonably necessary in conducting its oil operations on the land. Appellant's first four points complain of the submission of issues 19, 25, 27 and 31 to the jury and urge that the court erred in overruling its objections thereto because

each assumes as a fact a controverted issue and, therefore, constitutes a comment on the weight and credibility of the evidence.

■ In regard to special issue number 19, appellant contends that appellee Thomas by his pleadings undertook the burden of proving not only that appellant cut the firewall in question but also that salt water and waste were released from the firewall onto appellee's farm land. Appellant contends that issue number 19 assumed a controverted fact issue, that is, that salt water and waste were contained within the firewall at and prior to the time it was cut. An affirmative answer to special issue number 19 would, of course, require a finding that salt water and waste were within the firewall at the time the firewall was cut. However, such fact issue was preliminary, and evidentiary to the ultimate issue inquired about in special issue number 19, that is, whether appellant cut the firewall and thereby permitted oil and waste to escape onto appellee's land. The assumption of such fact in the issue complained of, even if it should be held error, was not reversible error because the effect of the manner of submission was merely to place an additional burden upon appellee. Columbia Casualty Company v. Combs, Tex.Civ. App., 188 S.W.2d 1015.

■ Special issues 25 through 27 are concerned with whether appellant failed to replace the firewall after installing storage tanks at a part of the lease designated as Thomas "A and B", whether such failure was negligence and whether appellee's land was permanently damaged for farming purposes on account of oil and salt water flowing from such tanks. Appellant contends that special issue number 25 was objectionable for the reason that it was a comment upon the weight and credibility of the evidence in that it assumed that the firewall was removed and required replacement. The material question here inquired about involved the alleged failure of appellant to replace the firewall after installation of its storage tanks on that portion of the

lease. The question whether the firewall was removed was likewise preliminary and evidentiary to the controlling issue. It was not reversible error to assume that fact in inquiring whether appellant had failed to replace such firewall.

 Special issue number 27 inquires whether appellee's land was permanently damaged for farming purposes "on account of oil and water flowing from these tanks, if you have so found?" Appellant contends that the manner of submitting this issue constituted a comment upon the weight and credibility of the evidence, in that the court assumed and in fact instructed the jury that oil and waste had flown from such tank battery onto appellee's farm land. A party objecting to a charge is required by Rule 274, Texas Rules of Civil Procedure to point out distinctly the matter to which he objects and the grounds of his objection. The point directed against issue number 27 did point out the matter complained of and the ground of the complaint. However, it is not well taken. In appellant's motion for new trial the contention was simply that the court erred in overruling defendant's objections to issue number 27, because "the same was a comment upon the weight and credibility of the evidence." An examination of appellant's objections to the submission of issue 27 in this connection did not refer to the specific objection here complained of and the matter was therefore waived and cannot be raised for the first time on appeal. The objection to issue 27 did refer to objections to other special issues and attempted by such reference to adopt and apply such objections to such special issue. This procedure is prohibited by Rule 274.

 In appellant's points 5 through 10 it is contended that there was no evidence to support the affirmative findings of the jury in answer to special issues numbers 1, 19 and 31, and that the court therefore erred in overruling its objections to the submission of such issues and in overruling appellant's motion for an instructed verdict.

Concerning the escape of oil from the Woodward Well number 3 inquired about in special issue number 1, appellee Thomas testified that he went on his land soon after a rain which occurred in October of 1961 and found that oil was standing in his field which in his opinion had been permitted to escape from appellant's Woodward number 3. Appellant's employee Tilley admitted that at about the time in question there was a pulling operation at the well and that some oil got away when a tubing was broken, but denied that any of the oil got away from the immediate vicinity of the well. Thomas stated that appellant had a pulling unit at the well and that work was "either going on or had been going on." Thomas testified that although it had rained at the time he became aware of the situation he saw that oil was still standing in his field, and in his opinion had probably been there a day or two. He stated that the water from the rain had apparently caused the oil to be moved some distance from the well; that it had settled in an area of about 70 by 165 feet and then continued on to a terrace for a total distance of about 1230 feet. Thomas stated that the area covered by the flow of the oil and water varied in width from about 15 to 35 feet except for the 70 foot strip which extended for about 165 feet. He stated that the cotton crop was already made for that year but that his land was permanently damaged by the flow of this oil on his land. Thomas testified that soon after he discovered the damage to his land he spoke to appellant Bob Robinson about it and told him in effect that some oil had gotten away from this well and flowed upon his land and that Mr. Robinson said, "Yes, I know it,—it made me so mad I could have killed Tilley,—I have threatened to fire him over it—." He stated that Robinson also said to him "You are going to have to realize, 'Cliff', that there are things happen that I can't help."

In our opinion there was evidence to support an affirmative finding of the jury to special issue number 1 and the court did not

err in overruling appellant's objection to the submission of such issue and in overruling appellant's motion for an instructed verdict thereon. Robinson was a party to the suit and his declaration to appellee Thomas was against his interest and, in effect, an admission of negligence on the part of Tilley, who was appellant's employee. Although the statement was in the nature of a conclusion it was admissible against the appellant because he was a party to the suit and it was against his interest. Such statement together with other evidence showing that the oil escaped because of the breaking of the tubing in the pulling operation amply supported the submission of special issue number 1. Taylor v. Owen, Tex.Civ.App., 290 S.W.2d 771; Jewell v. El Paso Electric Company, Tex.Civ.App., 47 S.W.2d 328; McCormick and Ray, Texas Law of Evidence, Vol. 2, pg. 4.

■ Appellee Thomas testified that on July 13 he went to the location of the tank battery on the N/2 of the NW/4 of Section 141, inquired about in special issues numbers 19 through 24 and found that the firewall around the battery had been cut "plumb to the surface"; that the cut was to ground level from inside the tank battery so there would be a slight pour off from inside to the land on the outside. A picture was introduced in evidence by appellee showing such a cut or break in the firewall. Thomas stated that the firewall didn't just break, that he could see where a shovel had cut the firewall. Appellee further testified that there had been a big rain causing oil and salt water to escape from the area enclosed by the firewall and to run out upon appellee's land. He stated that he could see where such oil and water had flowed out of the firewall and settled on the ground across an area running generally in a northwest direction. He further testified that between July 13th and 27th there was another rain and another overflow from the tank battery. Appellant's employee Tilley stated that one of the tanks in the battery had gone bad and that the old tank was removed and another one moved in;

that in doing so some of the firewall was torn down. Tilley stated, however, that the firewall was built back in as good a shape as it was and that water could not run out of the tank battery on appellant's land.

In our opinion the testimony and the circumstances, as above set out in substance, constitute some evidence in support of a finding that the firewall in question was cut or torn down by the defendant, his agents or employees, and appellant's points complaining of the action of the court in overruling his objections to such issue and in overruling his motion for an instructed verdict that appellant, his agents or employees did not cut such firewall, are not well taken.

■ Appellee Thomas alleged that on January 24th, 1963, appellant's shipping lines from tanks designated as "Thomas A and B" broke and oil flowed across appellee's farm a distance of 1,067 feet covering a width of about 15 feet over the entire distance, saturating the soil as it spread. Plaintiff alleged that this pipeline had been reburied in the spring of the previous year because it had been buried too shallow and had been broken when plaintiff's plow came into contact with the pipeline. Plaintiff alleged that the line was rusty and deteriorated at the time it was lowered by appellant, his agents and employees, and that appellant knew, or in the exercise of ordinary care should have known, of such rusted and deteriorated condition and that the line was likely to break, but appellant nevertheless did replace the pipeline in such deteriorated condition; that such action constituted negligence and was a proximate cause of the damage to appellee's land by reason of the breaking of such pipeline and the spread of oil over his farm as above set out.

Appellant's 7th and 10th points urge that there was no evidence to support an affirmative finding that appellant, his agents, or employees did or omitted to do any act which caused the break in the shipping line on appellee's land on January 24, 1963 and that the court therefore erred in overruling

his objections to special issue number 31 and in overruling his motion for an instructed verdict on such issues. These points are overruled.

Appellee testified that on January 24, 1963 the shipping line in question broke; that oil got away and ran down the terrace for a distance of over 1,000 feet; that this was the same shipping line that had been previously broken by plowing in February of 1962 and then replaced at a lower depth. The lease under which appellant operated provided that "When requested by lessor, lessee shall bury all pipes below plow depth." Appellee testified that he requested the line to be lowered after it was broken by the plow in 1962, and had, in fact, made such a request to appellant prior thereto, but that appellant had not complied with the request until after the line was broken by the plow. Appellee introduced pictures which he testified were taken on January 25th which was the day after the break and stated that such pictures accurately portrayed the condition of the field at the time they were taken. Appellee testified that he had an opportunity to inspect the line after it was broken by plowing in 1962 and that at that time it "looked pretty sorry" to him. The evidence is undisputed that the line was replaced after the break on January 24, 1963 which indicates that it was not then in good condition. Appellee also testified that appellant's employee Tilley told him that the old line should not have been put back in at the time it was lowered to below plow depth. We are of the opinion that there was some evidence in support of an affirmative answer to special issue number 31 and evidence tending to show that appellant was guilty of acts and omissions causing the January, 1963 break in the shipping line on appellee's land.

As heretofore noted, one of appellee's claims for damages concerned the permitting of oil to escape from appellant's Woodward Well number 3. In this connection appellee alleged that in October of 1961, oil flowed from a well down to and

along a terrace in a southeast direction "from the well 1230 feet upon the terrace channel and upon standing crops for a distance of 165 feet in length and 70 feet in width, causing the land to become unfit for farming purposes." Appellee testified that he measured the area that was damaged from the escape of oil at the Woodward number 3 well. He stated that the total distance of drainage of oil and water from the well was about 1230 feet. A blackboard was used in giving his testimony and it is not possible to determine the exact import of his testimony in all cases because in several instances he would state that he measured from here (indicating) in this direction (indicating) and then on down in here. (Indicating). Appellee did clearly state however that the route which the oil and water traveled from the well proceeded to a point about 660 feet from the well where the land flattened out and the oil settled; that water had moved the oil to bring it to such position; that it settled out in an area "in here (indicating) 70 feet by 165 feet, I believe," and then that the route of the oil and water continued on to a terrace, and from then on covering a total distance of 1230 feet. Appellee testified that the width of the path which the oil and water traveled varied; that it would be as narrow as 35 feet or 20 feet or 15. On cross examination the attorney for appellant inquired of appellee as follows, "are you claiming damages in this lawsuit for an area 600 and some-odd feet, or what your pleadings say here, 135 by 70 feet?" And appellee replied "I am claiming it for 1200—by 1230 feet." Appellant objected to this statement by appellee on the ground that it was not in response to the pleadings and that appellant had had no reasonable opportunity to prepare for it. This objection was overruled and in appellant's 11th point it is urged that the court erred in failing to sustain his objection to such testimony. In our opinion no reversible error is shown in the action of the court in failing to sustain appellant's objections to this testimony. Appellee alleged damages in the amount of $500.00 in connection with this claim. The damage assessed by

the jury because of the escape of oil from the Woodward Well number 3 was only $100.00. The evidence considered in connection with the record as a whole was not such that it was calculated to and in our opinion did not cause the rendition of an improper judgment.

■ In appellant's 12th point, it is urged that the court erred in failing to sustain appellant's objections to the testimony of Bob McKinney concerning certain practices of Southwestern Hydrocarbon Company for the reason that such testimony was immaterial and had no bearing upon the issues concerning ownership of the shipping line in question. Appellee had alleged and sought to prove that the shipping line was the property of the defendant; that in the spring preceding this break the defendant reburied the line while it was in a state of deterioration; that appellant knew or should have known it was unfit for such purpose, and that the line parted because of such deterioration and damaged appellee's land. Appellant urges that the failure of the court to exclude the testimony of the witness McKinney concerning the practice of the Southwestern Hydrocarbon Company or Mesa Pipe Line Company with other operators or producers in the area in which Robinson Drilling Company operated was irrelevant to the ownership of the line here in question and was prejudicial to appellant's case before the jury. The record shows that the witness McKinney when asked whether Southwestern Hydrocarbon in every instance required the producers to build and maintain such lines to a connection with their pipeline stated in effect that he did not know. The witness did state however that all of the ditches he had dug from producers tank batteries to Southwestern Hydrocarbons had been paid for by the producer. It is also noted that appellant's witness Tilley when asked on cross examination whether Hydrocarbon required operators to lay their own shipping lines to its main line was permitted to answer without objection that he did not know. The admission of the evidence complained of was in our opin-

ion not reversible but was harmless error as contemplated by Rule 434, T.R.C.P. The evidence considered in connection with the record as a whole was not such that it was calculated to cause or probably did cause the rendition of an improper judgment.

■ Appellant's 13th point complains of the failure of the court to sustain appellant's objections to certain argument of appellee's attorney to the jury. The argument complained of was as follows: "He asked us to produce a copy here of the letters that we wrote making these demands; and, purely and simply, ladies and gentlemen, I forgot it and that is the only explanation I have." Appellant objected to this argument and requested the court to instruct the jury not to consider it because it was outside the record and constituted testimony by appellee's attorney.

Considering the record as a whole we hold that the action of the court in failing to sustain appellant's objection to the above argument does not constitute reversible error. The letters referred to and the argument complained of were in connection with special issues 7–A through 12 which dealt with appellee's claim for damages to his land because of the alleged failure of appellant to bury its pipeline below plow depth. All of these issues were answered in favor of appellant and judgment was entered accordingly. No harm could have been suffered by appellant by reason of such argument.

The judgment is affirmed.

ON MOTION FOR REHEARING.

On motion for rehearing appellant calls our attention to the fact that in discussing special issue number 19 we attributed to Mr. Tilley's testimony that the firewall around the north or Woodward tank battery was torn down in exchanging tanks within the battery when in truth and in fact the testimony referred to was directed to the Thomas or south tank battery. We have examined the record and find that appellant's contention in this respect is well tak-

**732**

en. However, we remain of the opinion that the evidence in the case supports the finding of the jury in answer to special issue number 19 and that the court did not err in overruling appellant's objections thereto and in overruling his motion for an instructed verdict.

Appellant's motion for a rehearing is overruled.