## CARPENTER v. DALLAS RAILWAY & TERMINAL CO.

No. 13199.

Court of Civil Appeals of Texas. Dallas.

May 15, 1942.

Rehearing Denied June 12, 1942.

Grace N. Fitzgerald, of Sherman, for appellant.

Burford, Ryburn, Hincks & Charlton and W. M. Taylor, Jr., all of Dallas, for appellee.

YOUNG, Justice.

Appellant's suit in the lower court was for personal injuries, the contest resulting in de-fendant's judgment following a jury verdict. This was a second trial, the first verdict of $1,200 having been set aside by agreement.

According to her own testimony, plaintiff was at the intersection of Elm and St. Paul Streets in downtown Dallas, where an outbound Belmont street car was standing, with front door open, admitting passengers. She had walked from the south curb of Elm Street toward the car, to get on, having already purchased a fare token. As she reached the standing car, at the east end of the safety zone, the door closed, and she gave a succession of loud knocks to attract the motorman's attention, but to no avail. She had previously boarded the car many times at this intersection, after knocking on the entrance door for admittance; however, on the occasion in question, the motorman (who was stationed at the front end) did not look around, but stood there; and, the traffic lights changing, propelled the car quickly to the left on St. Paul Street; plaintiff stating further that the car's rapid movement around the corner rather startled her; that she turned and was attempting a passage to the south edge of said safety zone, taking three or four steps, when she was struck by the rear end of the street car as it rounded the curve.

The time was about seven o'clock on the evening of April 9, 1938, when public traffic on Elm Street was very heavy. The doors of defendant's vehicle had glass panels; and on the point of whether the motorman ever realized the presence of Mrs. Carpenter in the street, plaintiff testified that the operator was in plain view; that, "If he had looked in my direction he could have seen me; if he had looked at the door when I was knocking, he could have seen through the door * * *. The operator of the car never turned around to look at me. He was looking off to the left or ahead of him; he never did turn around and look at me." In a written statement made by plaintiff to defendant's claim agent some five or six days after the accident, she said, in part, "I am sure the operator did not see me"; the admission last quoted being qualified by her on cross examination at the trial, as follows: "I may have told him (the claim agent) that I was sure the operator did not see me. By that I mean, I could not attract his attention; I couldn't get him to turn around." Plaintiff was familiar with the fact that Belmont cars turned to the left at such intersection; also, that when one

704

made the turn, the rear end would swing out and away from the car tracks.

Defendant's motorman stated that he had no knowledge of the occurrence until his return to Elm and St. Paul Streets from the northeastern section of Dallas, when the supervisor told him about it; that he did not see anyone who had knocked on the door; and that he had gone around that corner many times with people standing in the safety zone, but didn't see anyone on this particular occasion. No other witness testified as to the conduct of the motorman or Miss Carpenter prior to or at the time she was struck. Defendant's car, 45 feet and 10 inches in length, was manned by the one operator, stationed at the front.

The jury answers found, in effect, that defendant's motorman did not fail to keep a proper lookout, and did not drive the street car at an unreasonable rate of speed at the time; that plaintiff did not fail to use ordinary care in her movements as the car rounded the Elm and St. Paul Streets curve; and that her injuries were the result of an unavoidable accident. Damages were assessed at $400.

The trial court refused to submit plaintiff's requested issue on discovered peril. Error is assigned as to this, also to any submission on unavoidable accident. It becomes unnecessary to discuss the materiality of the latter issue, because defendant's motorman was acquitted of negligence on other grounds.

■■ It is also obvious, from the testimony above outlined, that essential elements of discovered peril are not presented by the facts of this record. The doctrine of discovered peril "has no application in the absence of actual knowledge, on the part of the person inflicting the injury, of the peril of the party injured in time to avoid the injury by the use of the means and agencies then at hand. If he had no such knowledge, the new duty was not imposed, though it be clear that by the exercise of reasonable care he might have acquired same. The burden of proof was upon plaintiff in this case, in order to recover for a breach of such new duty, to establish, not that the employés might, by the exercise of reasonable care, have acquired such knowledge, but that they actually possessed it." Texas & P. Ry. Co. v. Breadow, 90 Tex. 26, 36 S.W. 410, 412. But the physical facts, plaintiff argues, including the testimony of motorman Smith

that he kept a proper lookout, constituted .circumstantial evidence raising the issue; otherwise, defendant's employes, by mere denials, could always evade discovered peril. Plaintiff's position in the street, toward the rear or to the right of the car driver, aided by her testimony that he did not look around, but off to his left, or ahead, clearly distinguishes the instant case from those in which the issue (discovered peril) has been held provable by circumstantial evidence; see Texas & N. O. R. Co. v. Goodwin, Tex. Civ.App. 40 S.W.2d 182, writ refused, and Fernandez v. Rahe, Tex.Civ.App., 61 S.W. 2d 529, writ refused. No testimony has been pointed out tending to discredit the motorman's statement of seeing no one in the safety zone, and of not hearing the alarm testified to by plaintiff. In Young v. Dallas Ry. & Term. Co., Tex.Civ.App., 136 S.W. 2d 915, 919, injuries were sustained at the same intersection. There, Miss Young had been a passenger, but, after alighting in the safety zone, was hit by the rear overhang of the departing car. Her presence in the street car was thus known to the motorman; yet, we held the doctrine of discovered peril inapplicable under the defensive testimony. Judge Looney there said: "The operator was not contradicted by any witness, but, in a sense, was corroborated by appellant who also testified that, after leaving the car, she took two or three steps in the direction of the south curb on Elm Street and did not turn, or look back."

■ Now, if we be correct in the conclusion above reached, and defendant's operative having been found free of blame on all other charges of negligence, there is nothing in appellant's situation affording escape from the further general rule that " * * * a street railway company will not be held liable for an injury to a passenger or a pedestrian, which is caused by the overhang of one of its cars as it rounds a curve, unless its employes fail to exercise a reasonable degree of care in the circumstances." Editor's Note, Annotations, Wheeler v. Des Moines City R. Co., Iowa, 55 A.L.R. 479.

Various other points are urged as error, involving in the main, improper argument and court rulings on admission and exclusion of testimony. All assignments have been fully considered and are overruled. The judgment appealed from is in all respects affirmed.

Affirmed.