DALLAS RY. & TERMINAL CO. v. FARNSWORTH.

No. 14009.

Court of Civil Appeals of Texas. Dallas.

May 20, 1949.

Rehearing Denied June 24, 1949.

Burford, Ryburn, Hincks & Ford and Howard Jensen, Dallas, for appellant.

White & Yarborough and W. E. Johnson, Dallas, for appellee.

YOUNG, Justice.

The suit was for damages growing out of personal injuries sustained by Mrs. Farnsworth when struck by the rear overhang of one of defendant's street cars as it turned to the left at an intersection. Upon a trial and jury answers to special issues, judgment was rendered for plaintiff (appellee) in the sum of $12,518, with consequence of this appeal. Appellee had been a passenger on defendant's vehicle, having alighted therefrom just before receiving the alleged injuries.

The material elements of plaintiff's cause of action and the company defenses thereto are sufficiently reflected in the following summary of jury questions and answers: (1) That the operator of the street car failed to give Mrs. Farnsworth an opportunity to get beyond the overhang of said street car before starting the same (around the intersection), which was negligence and a proximate cause of injuries; (2) that the street car operator failed to keep a proper lookout for Mrs. Farnsworth, which was likewise a proximate cause of injury; (3) that the street car operator did not fail to give warning of his intention to start the street car; (4) that on the occasion in question Mrs. Farnsworth did not fail to keep a proper lookout for her own safety; (5) that Mrs. Farnsworth failed to listen for the movement of the street car, which was not negligence on her part; (6) that Mrs. Farnsworth failed to walk to a position beyond the overhang of the street car, which was not negligence; (7) failure of Mrs. Farnsworth to step out of the way of the street car overhang at said time and place was not negligence; (8) no negligence was involved in Mrs. Farnsworth's being at the place where she was when struck by the street car; (9) the automobile traffic moving eastwardly on Elm Street just west of St. Paul Street at the time was not the sole proximate cause of injuries to plaintiff; and (10) nor were such injuries the result of an unavoidable accident.

Appellant's points on appeal may be summed up in the following: The trial court's error (1) in overruling defendant's motion for instructed verdict and for judgment notwithstanding the verdict, and in

thereby holding that there was some negligence on part of the street car operator which proximately caused plaintiff's injuries; (2) in failing to rule that the evidence was insufficient to constitute negligence on part of said street car driver, whereby plaintiff sustained injuries; (3) in refusing to hold that Mrs. Farnsworth was contributorily negligent as a matter of law; (4) in failing to set aside the jury verdict of $12,518 as excessive; (5) error in the court's admission of evidence in various particulars, also charging improper jury argument on part of counsel for appellee.

The locale of the occurrence was at intersection of Elm Street (running eastwardly) and St. Paul, where defendant's tracks turn to the left and proceed north on the latter street. Also, on Elm Street adjacent to south street-car track and intersection, the City maintains a safety zone for use of street-car patrons, marked with a row of metal buttons, each one foot in diameter, three feet apart, and extending along some 48 feet to the west. Within and overlapping these safety zone buttons to the east was another line of small brass buttons installed by defendant to mark the extreme outer sweep of its cars when making the left turn; all traffic of both streets being controlled by safety lights.

Under the first three points appellant company urges insufficiency of evidence as a matter of law to show any negligence on part of its operator proximately causing the injuries complained of; also arguing that plaintiff, in standing within reach of the street car overhang after alighting, was conclusively guilty of contributory negligence. These points require a determination of the legal sufficiency of all evidence tending to support the findings so challenged, viz.: (Issue 1) Failure of car operator to give plaintiff an opportunity to get beyond overswing of car before starting it; (Issue 4) his failure to keep a proper lookout for plaintiff; and (Issues 14, 15) that the failure of Mrs. Farnsworth to walk to a position beyond the street car overhang was not negligence.

Plaintiff, aged 51 at time of accident, on December 13, 1946, was employed as proprietor of a restaurant at Sears Roebuck's South Lamar store. She had then resided in Dallas some three years, having previously lived in Milwaukee and Saint Paul. Her testimony in brief was that she had used the same car line (Myrtle-Belmont) in going to and from work, always leaving it at Main and Lamar, never having ridden as far up town as Elm and St. Paul; was therefore not familiar with the situation at place of accident, nor that the tracks there turned left and to the north; that she became a passenger on date of injury along in afternoon, boarding the car on South Lamar, together with afflicted adult daughter and grandson, aged three, intending to visit a place in vicinity of Titche-Goettinger's on upper Main Street; that when the car reached Elm and St. Paul she proceeded to get off in safety zone at the front exit behind a number of other passengers; that the signal light changed to red in the direction she was facing (south) just as she alighted, traffic blocking her movement to the south curb of Elm Street where she had intended to go; that after stepping off, holding the child by one hand, she had no time to take any further step when struck by the rear overhang of the street car.

P. K. Rogers, who was then a city traffic officer at the intersection, saw the street car strike Mrs. Farnsworth, stating that it was moving rapidly; that she was standing at approximately the most easterly safety zone button and two feet from it with a group of people there in the safety zone; that the daughter was the last one off car; that the south traffic light was red, with a lot of traffic moving east. To the question "From the time you saw Mrs. Farnsworth * * *. until the time the street car struck her, was there any time for you to warn her, or anything of that sort?" he answered "No, sir, there was no time." "Q. Was it kind of like that (snapping fingers)?" His answer was: "Yes, sir, fast"; estimating on another answer that the time was about ten seconds. He further testified that some one was standing in front of plaintiff at the moment, where she couldn't move ahead because of the traffic; there was some one to her right and a little forward; indicating from his observation of plaintiff's pre-

**984**

dicament that if she had moved, either to the left and outside the safety zone, or to the right, she would still have been within swing of the car.

Plaintiff's witness Roy Jackson, in an automobile parked directly behind the street car, testified that it started up rather abruptly; that when he first saw plaintiff it was "pretty crowded right in front of her"; stating on cross-examination that plaintiff was ten feet back of the front door of street car when hit; on redirect-examination, that he did not know whether she moved after stepping from the car, not having seen her until she was hit. O. W. Hanna, operator of the car in question, testified that his first knowledge of the accident was on return trip downtown when so advised by the supervisor; remembering little about the mishap at Elm and St. Paul save that his speed on rounding the curve was one to two miles per hour, not recalling whether he rang the bell on starting up; his eyes being focused to front and left when making the turn; and that his last look to the right before starting was when closing front door of car and seeing that traffic was clear. Here it may be noted that, in so far as the two rows of street markers overlapped (buttons of City safety zone and inside company buttons), the narrowest point of street car clearance was at the extreme east button of the safety zone—a distance of 2.2 feet. The company car was some 50 feet in length.

When a passenger is discharged from a street car at a regular stopping place, he is entitled to have a reasonable opportunity after leaving the car to get beyond the danger of its movement and operation. Wittkower v. Dallas Ry. & Terminal Co., Tex.Civ.App., 73 S.W.2d 867, writ refused; Trail v. Tulsa Street R. Co., 97 Okl. 19, 222 P. 950; White v. Connecticut Co., 88 Conn. 614, 92 A. 411, L.R.A.1915C, 609.

The rule would appear particularly applicable to the instant situation, which has been the locus of previous appeal. See Young v. Dallas Railway & Terminal Co., Tex.Civ.App., 136 S.W.2d 915; Carpenter v. Dallas Railway & Terminal Co., Tex.

Civ.App., 163 S.W.2d 703. Plaintiff testified that she did not know of the left turn; other testimony tending to show that she was momentarily prevented from moving out of the danger zone. It was the motorman's duty to keep a proper lookout for passengers discharged into said zone before starting his car, which duty Hanna claims to have performed, and that before starting up "There was no one at the point of my front door within the overswing zone." The jury has simply found defendant's operator guilty of an insufficient lookout under the circumstances; the foregoing facts raising issue of negligence on part of car driver and plaintiff alike.

The cases cited by appellant are in no wise in conflict with above conclusion; having reference to the general rule of nonliability for injuries resulting from a street car overhang after the passenger has been afforded a reasonable opportunity to move to a place of safety. Thus, in Steinburg v. Milwaukee Electric Ry. & Light Co., 22 Wis. 37, 266 N.W. 793, 795, the court said: "After the deceased was safely off the car and afforded the reasonable opportunity to walk to a place of safety, the motorman, who was in sole charge of the car, had a right to assume that the deceased would withdraw far enough to avoid being struck by the rear end of the car as it swung around the curve in the usual manner." In El Paso Electric Co. v. Ludlow, Tex.Civ.App., 291 S.W. 619, 621, the claimant, alighting from a street car, had taken several steps and knew of the turn when struck by the overswing; being held under the circumstances no longer a passenger and negligent as a matter of law. The court, adhering to a well-established rule, held that "in view of the well known fact that in rounding a curve the rear end of a street car will swing beyond the track and overlap the street to a greater extent than the front, the motorman may rightfully assume that an adult person standing near the track, who is apparently able to see, hear, and move, and having notice of the approach of a street car and of the existence of the curve, will draw back far enough to avoid being struck by the car as it swings around the curve in the usual and expect-

ed manner, and therefore no legal duty is imposed upon the motorman to warn such person against the possible danger of a collision with the rear, because of the swing, if he remains in the same position. 25 R.C.L. p. 1245, par. 108, and the cases there cited." It will be observed that the doctrine just quoted (holding as a matter of law that intending or discharged passengers must conclusively take notice of a street car overhang) has been limited by Texas decisions to persons "having notice of the approach of the car and of the existence of the overhang."

Appellant's complaint of excessiveness of verdict requires a résumé of testimony concerning nature, extent, and duration of injuries claimed by appellee. From her own narrative, she was knocked to the pavement and temporarily stunned by the impact, carried by ambulance to Parkland Hospital; was dazed, confused, and in pain, with hurting about head, neck, and right shoulder; in hospital five days, treated by her family physician, Dr. Buehler; after going home was in bed part time, checking back on job January 2, 1947, still suffering from dizzy headaches; that she was forced to return to hospital latter part of January on account of the injury, there about four days, going back on job February 15, continuing to have visual disturbance, dizzy spells and sense of confusion; that she got no better and in October had a nervous breakdown, going to country a week, returning to job, but holding it with difficulty on account of inability to concentrate, continual nagging headaches, dizziness, speech block, and an emotional instability; that she could see no improvement in conditions, and constantly worried about herself. Doctor and hospital bills to date of trial were in excess of $500 and at time of injury visual evidence thereof was knot on back of head, with swelling there and to right hip.

Dr. Buehler, an experienced and reputable physician, testified to plaintiff's good health before injury, though slightly overweight; that when he first treated her at Parkland on day of injury she was complaining of severe pain and had head bruise; that she continued to complain after leaving hospital and during 1947 of severe headaches, various difficulties concerning vision and speaking, being subject to emotional upsets and inability to concentrate; such condition persisting without noticeable improvement; that while X-ray pictures showed no skull fracture, a blow to the head, without fracture, might produce damage to the brain resulting in the trouble of which appellee complained. He said that persistent pain near the brain was calculated to cause trouble; in his opinion her complaints, though subjective, were not those of a malingerer, but real, she in fact actually suffering from severe headaches, dizziness, and vertigo. On her second trip to hospital (January 1947) a spinal puncture was performed with result normal, Dr. Buehler's letter of release stating that the diagnosis was a "possible muscular inflammation due to a blow." Plaintiff was also treated by an orthopedic specialist (Dr. Knight) and a phsychiatrist (Dr. Pearcy) who were not called to testify; Dr. Shelton, examining her, prior to the trial, finding no organic basis for the head complaints.

Mrs. Farnsworth was employed by Interstate Company, supervising operation of restaurants in Sears Roebuck Stores, training help, receiving salary of $250 per month at time of injury. She was sent to oversee operation of the Houston Store in April 1947, with added responsibilities and salary increase of $400 per month; then going to San Antonio and supervising a new installation and returning to Dallas in same employment at time of trial. She was paid by her employer for all time lost from work since injury. The last medicines prescribed by Dr. Buehler (October or November 1947) were sedatives to relieve headache and for nerves.

Under the foregoing detail of disability as a result of injury, even from standpoint of plaintiff, the amount of recovery is quite large—too large, we think —but we are referred to no method whereby the excess can be reached without some showing of prejudice on part on the jury which we do not find. Rule 440, Texas Procedure, our authority for remittitur of excessive verdicts, is in the same language

as old Art. 1862, which was construed at an early date to mean, under·like circumstances (damage ·action and general recovery), that: "In cases of this sort involving elements of damage incapable of accurate measurement in dollars and cents, the field of the jury's discretion is broad indeed, and a verdict can be disturbed by this court as excessive only when, by its size compared ·with the injury suffered, it is manifestly the result not of a sound discretion temperately exercised, but of passion and prejudice." Missouri, K. & T. R. Co. v. Nesbit, 40 Tex.Civ.App. 209, 88 S.W. 891, 893; 3 Tex.Jur., sec. 829 p. 1179. See also Western Union Tel. Co. v. Hicks, Tex.Civ.App., 253 S.W. 565; World Oil Co. v. Hicks, 129 Tex. 297, ·103 S.W.2d 962; Texas & N. O. R. Co. v. Haney, Tex.Civ.App., 144 S.W.2d 677. On the other hand, the record is suggestive of a rather careful weighing of evidence by the jury as applied to the issues, ·taken separately. For instance, their answer that the motorman rang his bell before starting car is in conflict with the latter's own statement made to the company claim agent. Likewise the jury issue concerning plaintiff's failure to listen for movements of the car was answered by them in the affirmative. The point must be overruled.

■ The following points complain of the court's ruling on inadmissibility of testimony: (1) Over objection of counsel, plaintiff was permitted to testify that when she boarded the particular car, seven to ten minutes before the accident, the motorman appeared in a great hurry, "scarcely" allowing passengers to get off "before· he started again" at named intermediate stops. The narrated acts of defendant's· employee were not subject to the· objection made, occurring so near the time· and·place of injury as to be, in practical: effect, a part of the transaction. 17 Tex.Jur. Res Gestae, sec. 257, p. 614; Houston Oxygen Co. v. Davis, 139 Tex. 1, 161 S.W.2d 474, 140 A.L.R. 868. (2) Appellant's further objection concerned cross-examination by appellee of the motorman relative to a like accident at the same place on same day, holding a newspaper clipping in hand. There was no error in the procedure, the matter of other accidents having been first ·injected into the case by appellant's counsel on direct examination and being offered "for the purpose of rebutting or impeaching his testimony with reference to nobody getting hit"; and to which limitation, ordered by the court, no· further objection was made.

■ No error is presented by bill of exception No. 3 complaining of the continuous reference by counsel to plaintiff as a widow with grandchild and afflicted daughter. The court qualifiedly sustained objection thereto, though counsel was within the record on the facts, the statement not appearing unduly repetitious. Likewise the statement made by Mr. Johnson in closing argument appears but as a jocular reply to argument of counsel for appellant. Aside from this the court promptly sustained objection to the matter complained of, thereby removing any probability of injury.

Finding no error of a reversible nature in the record, appellant's points of appeal are accordingly overruled and the judgment in question affirmed.

BOND, Chief Justice (dissenting).

The majority opinion affirming the judgment of the trial court presents a fair résumé of the record upon which the judgment is based. We differ as to the legal conclusions that the operator of the involved street car was guilty of negligence proximately causing appellee's alleged injuries; that the appellee was not guilty of contributory negligence; and that the extent of appellee's alleged injuries justifies the amount recovered,—$12,518. Other assignments of error—I am not in accord with the majority—they will receive casual mention.

The ofttime· pronouncement that negligence, direct and contributory, proximately causing injury and the extent of injury are issues determinable by the trier·of facts, and where there ,is substantial evidence in support of the findings and judgment of the trial court, the case must .be affirmed, need not be labored here. In keeping with the general practice of appellate courts of this state, it.is always with reluctance that

the findings of a jury on issues of fact and the judgment of the trial court are set aside; however, when such findings and judgment are so greatly against the overwhelming weight of the evidence as to be clearly wrong, appellate courts have the authority, and it is clearly their duty, to review and set aside such findings and judgment. Here, however, it may be mentioned, courts are agencies of the Sovereign, created under its authority for the purpose of hearing and determining issues regarding legal rights; and where one is deprived of such rights, courts should not hesitate,— or adopt an appeasing agreeable attitude at the expense of duty.

The issues involved in this appeal are clearly set out in the majority opinion, hence will not be repeated here. The points of difference will be discussed in line with the uncontroverted testimony, principally from appellee herself. It may well be said that the opinion of the majority clearly shows such miscarriage of justice as to warrant a reversal of this cause.

Mrs. Farnsworth was struck by the overhang of the rear end of appellant's street car as it made a left turn off of Elm Street onto St. Paul Street in the City of Dallas. The street car was approximately 50 feet long and had stopped at Elm Street at the intersection with St. Paul to let passengers on and off the car. Appellee was a passenger; she, with her daughter and grandson, were the last persons off of the car— she preceding her daughter; and, after alighting, she stood in the safety zone provided by the City until her daughter alighted, the doors of the car closed, the City traffic lights changed from red to green, and the street car started and went forward, almost the length of the car, rounding the curve at one or two miles per hour, with bell ringing, before being struck. In answer to questions as to whether there was anyone else in the safety zone, appellee said: "Not to the best of my knowledge." The police officer on duty at the intersection testified: "Q. How much time was there between the time you *saw her there* and the time the car hit her? That is what I am trying to get at. A. Approximately ten seconds. Q. About the time you could count ten? A. Yes, sir. Q. And during part of that time some one else was getting off of the car? A. No, sir, the car had already closed its doors." In the light of such related circumstances, can it reasonably be said that the operator of the street car was guilty of negligence in failing to keep a "lookout," or that he failed to give Mrs. Farnsworth an opportunity to get into a place of safety? Evidently the street car had to move on the green traffic light; the fifty-foot car had moved its length; appellee had safely alighted from the car; the doors of the car were closed and the car was rounding the corner. The policeman saw her standing in the safety zone and estimated that she stood there ten seconds before the backend overhang reached her. In all reason, the operator, sitting on the left side of the front end of the car was duty-bound, in the discharge of his duty to the public, to look forward and not backward. He could not have seen her, had he looked; and certainly, not seeing her in a perilous position, then how could he anticipate that, after alighting from the car and standing in the zone of safety, she would move to a dangerous position? The answer is apparently negative.

The evidence further shows that the safety zone at this street intersection is 48.5 feet long, marked by corrugated iron buttons about one foot in diameter, placed there by the City of Dallas for safety to the public; and within that zone the street car company had placed another precaution, a row of shiny metal buttons about four inches in diameter, extending along the street car track and rounding the curve, not closer than four or six inches from the nearest rail, as a safety device from the overhang of its street cars. According to a plat introduced in evidence, where appellee was standing there was almost four feet of complete safety space, where automobile or other vehicular traffic is not permitted, and between the overhang buttons of defendant's street car and the safety zone buttons. Appellee had ridden street cars for over 20 years in the cities of St. Paul, Minnesota, and Milwaukee, Wisconsin; and had ridden, daily, for the last three years, on this same line, to and from her place of work. She had seen cars turn; often had stood in such safety zones when transfer-

ring from one line to another, and was familiar with the distinctive warnings of a street car as it starts in motion; but, notwithstanding her experience and observation, and such visible precautions, she says that she did not hear the air escape as the street car doors closed, or any distinguishable warning of its movement. She testified that she knew street cars made left and right turns; that they operate on stationary tracks and necessarily must turn with the tracks; but on this occasion she did not know that the car was going to turn—notwithstanding, at the intersection in question, there were no tracks extending further east on Elm Street, none turning south on St. Paul, and the only track there was the track turning north onto St. Paul Street. Mrs. Farnsworth, having lived in cities for more than 20 years, undoubtedly knew of traffic congestion at that time of day; thus, when she alighted from the street car at 3:30 or 4:00 in the afternoon, she should reasonably have expected the intersection to be congested so as to require the exercise of extreme caution for her own protection,—an essential necessity. Every precaution was provided by the City and the Street Railway Company for the protection of the public. The City had installed the traffic lights, indicating when to stop and when to proceed; had constructed the safety zone and provided police assistance to aid the public. The street car company had provided the necessary precaution to protect the public from the overhang of street cars as they make turns. Appellee knew these conditions; was a regular passenger on street cars; therefore, under such circumstances, can it reasonably be said that appellee was not guilty of contributory negligence proximately causing her injuries? Or, that the operator of the street car could have reasonably anticipated that she would not exercise the precaution of self-preservation to observe the safety devices and get beyond the ordinary hazards of the passing street car? Her position is untenable.

In the case of Young v. Dallas Railway & Terminal Co., Tex.Civ.App., 136 S.W.2d 915, 916, 919, on facts similar as here, opinion by Justice Looney of this Court, we held, citing Townsend v. Houston Electric Co., Tex.Civ.App., 154 S.W. 629, writ refused, that: "Where plaintiff, about to board a street car, got too close to the track, and was struck by the overhang of the fender as the car was rounding the curve, he was negligent, as a matter of law, and therefore could not recover for negligence of the motorman in failing to keep a proper lookout." In that case we also held (citing Fort Worth & D. C. R. Co. v. Shetter, 94 Tex. 196, 59 S.W. 533, where the Supreme Court was considering a similar situation as here) that there must be evidence to show knowledge by the person causing the injury of the perilous position of the person injured (not mere lack of care to discover it), in order to justify the submission of the issue of discovered peril as a ground of recovery; and further, that the person causing the injury is not bound to anticipate negligent conduct on the part of the person injured. We further held in that case that: "After alighting from the car and ceasing to be a passenger, appellant was absolute master of her own conduct. She could have stood in a place of absolute safety, as she had done on previous occasions, as her fellow passengers did on the occasion in question, as often had been done before by the traffic officer and others. Her admissions show that she exercised no foresight, and seems to have been wholly disregardful of her own safety. The fact that appellant was struck by the overhang shows, inescapably, that she negligently walked and stood in a position of danger, that subjected her to the injuries received. We are of opinion, therefore, that she, alone, was responsible for the accident, hence guilty of contributory negligence, as a matter of law."

In the light of the above authority, and on facts similar to the facts here, the operator of the car in question did not and could not observe appellee in a perilous position; he did not know of the accident until on the return trip when he was advised of the occurrence; and after appellee had alighted, the door closed, the car moved almost its length, rounding the curve, certainly he could not have anticipated that any of the passengers who had alighted from his car would stand in danger, and not remain in the safety zone, as to require him

to keep a lookout. Appellee was guilty of contributory negligence, as a matter of law. To digress a moment,—in the case of Rogers v. Dallas Railway & Terminal Co., Tex. Civ.App., 214 S.W.2d 160, affirmed by the Supreme Court, Dallas Railway & Terminal Co. v. Rogers, 218 S.W.2d 456, where a penal ordinance of the City of Dallas required the Railway Company operators to yield the right-of-way to pedestrians as they make left turns, we held it was the duty of the operator to avoid negligence by looking ahead of him to whom he must yield the right-of-way, instead of looking backward to people he had already safely passed.

Mr. Jackson, witness for appellee, testified that he saw Mrs. Farnsworth get off the street car and move approximately ten feet back west from the door of the car before the accident; at least, he knew that she was ten feet back west of the point where the front door of the street car was stopped after she was struck by the rear overhang of the car. Since the evidence does not raise an issue as to discovered peril, and since the evidence shows as a matter of law that the appellee was guilty of contributory negligence, it follows that the judgment of the trial court should be reversed and here rendered for the appellant.

Furthermore, the jury verdict fixing appellee's damages at $12,518 is excessive. Mrs. Farnsworth, at time of the accident, was 51 years of age; she was an experienced cateress; worked for Interstate, Inc., in 1942, at Milwaukee, Wisconsin; moved to Dallas in 1944 and was employed by Sears-Roebuck Retail Store on South Lamar Street. She also trained other employees to manage restaurants. At the time of the accident in December 1946, she was being paid the sum of $250 per month. She sustained and suffered injury characterized only by what physicians term "subjective symptoms,"—headache, pains and nervous disorder. Only a slight bruise on her head. She went to Parkland Hospital where she remained five days, and then home where she remained confined until December 23; and, according to her testimony, she went back to work on January 2, 1947. X-ray pictures were made and spine punctured by physicians; neither revealed fracture or damage to the bone structure of her head or neck. She complained of severe headache, various difficulties concerning vision, speaking, and emotional upset. In all, appellee lost 19 days from her work immediately after the accident. In the latter part of January she went back to the hospital for further X-rays; then stayed home for a time; and about February 15, went back to work for Sears Roebuck Company. Several physicians stated that she had no organic trouble. In March, she was sent to Houston where she managed a restaurant and was given additional responsibilities at a salary of $400 per month; later brought back to Dallas; then sent to San Antonio for the opening of a restaurant in July or August 1947. She was again recalled to Dallas and placed in charge of Sears-Roebuck Company's restaurant on Ross Avenue, and at time of trial was earning $400 per month. In view of no evidence as to liability, and the weak and unsatisfactory evidence of injury—all subjective —so excessive as to indicate passion and prejudice on the part of the jury, the judgment should not stand affirmed.

There are other points of error which are calculated to prejudice the jury: The appellee, over objection of appellant, was permitted to relate: "A. When we got on the car (at Sears Roebuck Store on South Lamar), we couldn't get to a seat even before he started, he was in a great hurry. He stopped on Lamar and Young, and they scarcely got off before he started again. The same was true on Lamar and Main." Such is not res gastae of the occurrence. In the case of Feagins v. Texas Machinery & Supply Co., Tex.Civ.App., 185 S.W. 961, 963, writ refused, opinion by this court quoted with approval the text in 17 Cyc. 274, 276, paragraphs 1, 2: "That a fact existed or event occurred at a particular time cannot be shown by evidence that another fact existed or event occurred at another time unless the two facts or occurrences are connected in some special way, indicating a relevancy beyond mere similarity in certain particulars. Such relevancy is found where similarity in all essential particulars is shown to exist."

Then again, over appellant's objection, on cross-examination of the street car operator, appellee's attorney questioned him about some other accident:

"Q. We will get back to that in a minute. Now, you said that you had not hurt anybody there at that spot before or since? A. That is right, sir.

"Q. Didn't you on the same day there strike another man—an old man? A. No, sir, I did not, sir.

"Q. Didn't that happen there that day? * * * A. Not to my knowledge, sir. * * *

"Q. What was your answer? A. I said I didn't strike another person there that day.

"Q. You know nothing about another person getting hit there? A. All I know about another person getting hit there was a newspaper story."

Then again, recited facts in appellant's bill of exception No. 2, approved by the trial court, as follows: "* * * during said cross-examination of defendant's street car operator, plaintiff's counsel was holding in his hand and was looking at from time to time a newspaper clipping, which clipping was one column wide and approximately four to five inches long, and that during said time plaintiff's counsel was sitting in a chair being not more than four feet from the front right hand corner of said jury box, and that plaintiff's counsel, while holding said newspaper clipping, was sitting with his left side to the jury box and was holding the newspaper clipping within plain view of the jury. The paper was not, however, ever held so that any of the jurors could read the contents thereof or any part thereof. The only testimony about any newspaper story was made by the witness Hanna as shown by the statement of facts to be a voluntary statement of that witness and not in response to any question asked. Plaintiff did not undertake to introduce in evidence any newspaper story about her accident or any other accident. Counsel for plaintiff during the progress of the trial sat at the table at the place where counsel ordinarily sit and no objection was made to the court with respect to where counsel sat or about any paper or about any conduct of plaintiff's counsel in holding the newspaper clipping in his hand." What was the purpose of all this?

Manifestly, the only purpose which the above related facts could serve was to prejudice the jury against appellant; and, from the verdict rendered in this case, resulted in the desired effect. Such conduct, alone, justifies a reversal of this cause. No such prejudicial proceedings should be countenanced by any court.

In the light of the above, I respectfully dissent.